UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHIQIONG HUANG, et al.,

           Plaintiffs,

v.                      Case No.: 8:20-cv-2293-VMC-TGW

TRINET HR III, INC., et al.,

           Defendants.

_____/

**ORDER**

This cause is before the Court pursuant to the Defendants' Motion to Dismiss the Amended Complaint (Doc. # 29), filed on September 10, 2021. Plaintiffs responded on October 15, 2021 (Doc. # 43), and Defendants replied on November 4, 2021. (Doc. # 50). For the reasons that follow, the Motion is denied.

**I.   Background**

    **A.   Factual Background**

This case involves multiple employer plans ("MEPs"). (Doc. # 23 at ¶ 38). "At its most basic level, a MEP is a retirement plan that is adopted by two or more employers that are unrelated for income tax purposes." (Id. at ¶ 39) (internal quotation marks omitted). MEPs "are typically used by outsourced human resource providers . . . like TriNet."

1

(Id. at ¶ 38). Specifically, TriNet[1] is a professional employer organization ("PEO") that provides human-resources expertise, payroll, and employee benefits services to small and medium-sized businesses. (Id. at ¶¶ 24, 38). The retirement plans at issue are the TriNet 401(k) Plan (the "TriNet III Plan") and the TriNet Select 401(k) Plan (the "TriNet IV Plan") (referred to collectively as the "Plans"). (Id. at 1). TriNet established the Plans in order to help the employees of their client employers save money for retirement. (Id. at ¶ 41). The Plans are "defined contribution" or "individual account" 401(k) plans under ERISA.[2] (Id. at ¶ 42). By the end of 2018, the TriNet III Plan had $2.9 billion in assets under management, and the TriNet IV Plan had $1.1 billion in assets under management. (Id. at ¶ 48).

---

[1] Defendants TriNet HR III, Inc., TriNet HR IV, Inc., the Board of Directors of TriNet HR III, Inc., the Board of Directors of TriNet HR IV, Inc., and the Investment Committee of TriNet Group, Inc. will be collectively referred to as "TriNet" unless stated otherwise.

[2] The retirement plans at issue in this case are defined-contribution plans, "which provide[] for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses." 29 U.S.C. § 1002(34). Defined-contribution plans offered by for-profit companies are commonly known as 401(k) plans.

Plaintiffs are all participants in the Plans. (<u>Id.</u> at ¶¶ 17-21). Defendants TriNet HR III, Inc. and TriNet HR IV, Inc. are the sponsors and fiduciaries of the Plans. (<u>Id.</u> at ¶¶ 1, 24). Defendant Investment Committee of TriNet Group, Inc. (the "Committee") is responsible for selecting and monitoring the investments in the Plans and monitoring the Plans' expenses. (<u>Id.</u> at ¶ 25). Plaintiffs also name as Defendants the Boards of Directors of TriNet III and TriNet IV because the companies acted through the Boards. (<u>Id.</u> at ¶ 29).

Plaintiffs purport to bring this case as a class action for the following proposed class:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plans, at any time between September 29, 2014 through the date of judgment[.]

(<u>Id.</u> at ¶ 50).

According to Plaintiffs, Defendants breached their fiduciary duties by failing to adequately review the Plans' investment portfolio to ensure that each investment option was prudent, maintained certain funds in the Plan despite the availability of identical or materially similar investment options with lower costs and/or better performance histories, and failed to control the Plans' recordkeeping expenses. (<u>Id.</u> at ¶¶ 11-12, 57-116). First, Plaintiffs allege that

Defendants failed to investigate and select lower cost alternative funds. (Id. at ¶ 57). Specifically, Plaintiffs allege that Defendants retained several actively managed funds in the Plans' investment options "despite the fact that these funds charged grossly excessive fees compared with comparable or superior alternatives[.]" (Id. at ¶ 61). Plaintiffs allege that the expense ratios for many funds in the Plans greatly exceeded the ICI Median. (Id. at ¶¶ 63-66).

Second, Plaintiffs allege that Defendants breached their fiduciary duty by failing to utilize lower fee share classes that are available to "jumbo" defined contribution investment plans. (Id. at ¶¶ 68-77). Plaintiffs allege that "a fiduciary to a large defined contribution plan such as the Plans [here] can use its asset size and negotiating power to invest in the cheapest share class available," but that the TriNet fiduciaries failed to do so on multiple occasions. (Id. at ¶¶ 70, 73-77). Third, Plaintiffs allege that Defendants failed to utilize lower-cost and better performing passively managed funds in favor of higher-cost actively managed funds. (Id. at ¶¶ 85-96).

In addition to their allegations regarding the selected investments' costs and performance, Plaintiffs also allege that Defendants failed to monitor or control the Plans'

recordkeeping expenses. (Id. at ¶¶ 97-116). Plaintiffs take exception with the Plans' approach of using revenue sharing to pay for the Plans' recordkeeping and administrative costs and with the Plans' process of identifying and retaining its recordkeepers. (Id. at ¶¶ 101, 113-16).

Based on these allegations, Plaintiffs bring the following causes of action: (1) as against the Committee, breach of the fiduciary duty of prudence under ERISA; and (2) as against TriNet and the Board, failure to adequately monitor the Committee, thus breaching their fiduciary duties under ERISA. (Id. at ¶¶ 117-30).

### B.   **Procedural History**

Plaintiffs initiated this case on September 29, 2020. (Doc. # 1). In December 2020, the parties filed a joint motion to stay the case pending the Plaintiffs' exhaustion of the administrative remedies set forth in the Plans. (Doc. # 16). The Court granted the motion, requiring periodic status reports. (Doc. # 17). On August 6, 2021, based on the parties' representation that the appeals administrator had issued a final decision, the Court reopened the case. (Doc. # 22). The Plaintiffs filed the operative Amended Complaint on August 20, 2021. (Doc. # 23).

All Defendants have now moved to dismiss the Amended Complaint. (Doc. # 29).[3] The Motion has been fully briefed (Doc. ## 43, 50) and is now ripe for review.[4]

## II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the

---

[3] Defendants also filed an unredacted version of its Motion to Dismiss and certain exhibits under seal in order to protect confidential and commercially sensitive pricing information of non-parties to the litigation.

[4] The Court also solicited the parties' positions on whether this matter should be stayed in light of the Supreme Court's pending decision in Hughes v. Northwestern University, 2021 WL 2742780, at *1 (July 2, 2021). (Doc. # 47). The parties both opposed a stay, although for differing reasons. Upon careful review, the Court has determined that a stay is not appropriate in this case for two reasons. First, in the absence of guidance from the Eleventh Circuit, it is persuaded that the approach taken by the Third, Eighth, and Ninth Circuits is the correct one. See Garcia v. Alticor, Inc., No. 1:20-CV-1078, 2021 WL 5537520, at *4 (W.D. Mich. Aug. 9, 2021) ("The Third, Eighth, and Ninth Circuits have held that allegations regarding imprudent investment selections and excessive fees, such as the ones presented by Plaintiffs here, may state a claim for violation of ERISA. . . . The Seventh Circuit disagrees, but a petition for certiorari has been granted in the Seventh Circuit case. Absent guidance from the Supreme Court or the Sixth Circuit, the Court finds the majority view to be more persuasive than the Seventh Circuit's position." (citations omitted)). Second, the Court agrees with Plaintiffs that, no matter the Supreme Court's ruling on the pleading standard required in cases such as these, "no courts disagree that discovery must be taken on the actual process undertaken by a plan's fiduciaries." See (Doc. # 51 at 3).

plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. Analysis

Before the Court can address the merits of the Motion to Dismiss, there are several threshold arguments that it must address.

### A.   Standard of Review

Defendants contend that this Court should review the administrative decision denying relief to Plaintiffs under a six-step process enunciated in Blankenship v. Metropolitan Life Insurance Co., 644 F.3d 1350 (11th Cir. 2011). (Doc. #

29 at 8). Defendants argue that, using this standard, the administrator's decision should be affirmed because it was not *de novo* wrong, nor was it arbitrary and capricious. (Id. at 8-10, 24-25). Plaintiffs counter that Blankenship does not apply here because that case involved a plan administrator's denial of an individual employee's claim for benefits. (Doc. # 43 at 24). They argue that "the Eleventh Circuit's test does not provide for an administrator's denial of claims brought on behalf of a class of plan participants [and] the representative claims here require assessment before a federal district court." (Id.).

As Plaintiffs note, Blankenship was a case outlining a "multi-step framework" district courts should utilize in reviewing "an ERISA plan administrator's benefits decision." 644 F.3d at 1354 (involving an appeal of the defendant's denial of plaintiff's claim for long-term disability benefits). As such, it is silent on the standard of review courts should use when analyzing putative class action claims brought on behalf of a defined contribution retirement plan for breach of ERISA's statutory duty of prudence.

In 1989, the Supreme Court held that "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers" under an ERISA

benefits plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S.
101, 111 (1989). In the intervening years, federal courts of
appeals have split as to whether this deferential standard
applies to breach-of-fiduciary-duty cases. See Tussey v. ABB,
Inc., 746 F.3d 327, 335 (8th Cir. 2014) ("[W]e see no
compelling reason to limit Firestone deference to benefit
claims."); Tibble v. Edison Int'l, 729 F.3d 1110, 1129-30
(9th Cir. 2013) (holding that fiduciary's actions, in action
alleging breach of fiduciary duty, were subject to arbitrary
and capricious standard of review), vacated on other grounds
by Tibble v. Edison Int'l, 575 U.S. 523 (2015); Hunter v.
Caliber Sys., Inc., 220 F.3d 702, 711 (6th Cir. 2000) (finding
"no barrier" to applying a deferential standard to a case
"not involving a typical review of denial of benefits"). But
see John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo
Grp., Inc. Profit Sharing Plan, 26 F.3d 360, 369 (2d Cir.
1994) (declining to apply the arbitrary and capricious
standard beyond the "simple denial of benefits").

The Eleventh Circuit has not opined on this issue and,
in any event, the Court agrees with Plaintiffs that the Court
cannot address the administrator's decision at this juncture
without additional fact discovery. Defendants have not
pointed this Court to any breach-of-fiduciary-duty ERISA case

in which a matter was terminated on a motion to dismiss based only upon the record developed in administrative proceedings. The cases that advocate for a deferential standard in such breach-of-fiduciary-duty cases were decided on a later procedural posture. See, e.g., Tussey, 746 F.3d at 330 (involving motion filed after 16-day bench trial); Hunter, 220 F.3d at 706 (involving summary judgment). Thus, the Court will treat this matter as it would any other motion to dismiss and will not apply the Blankenship framework for resolving it.

**B.   Documents Considered**

Here, Defendants filed voluminous records in support of their Motion. See (Doc. # 30). Typically, on a motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Eleventh Circuit has recognized the incorporation by reference doctrine which permits courts to consider documents attached to a motion to dismiss without converting the motion into one for summary judgment, but only if the attached documents are central to the plaintiff's claims and

undisputed. <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002).

In the Motion to Dismiss, Defendants point to portions of the administrative record to argue that:

(1)   "Plaintiffs' claim that the expense ratios of the Plans' investment options exceeded the ICI Median is plagued by errors – indeed, the administrative record establishes that plaintiffs allege erroneous expense ratios for all but one of the challenged investments in the TriNet 401(k) Plan. . . . [Relying on the "correct" expense ratios], it is readily apparent that almost all of the challenged funds charged fees well below the ICI Median."

(2)   "In 2020, the Plans invested in the lowest-cost share class for six of the nine challenged investments. And the difference in cost for the other three investments was entirely attributable to a 'revenue sharing' credit that the 'higher-cost' share classes made available to defray recordkeeping costs[.] . . . Plaintiffs' claim that defendants failed to select lower-cost investments fails at every level and must be dismissed."

(3)   Defendants use the documents to outline the RFP and RFI process used to select the Plans' recordkeeper and underscore how their process for doing so fails to show imprudence or a failure to monitor.

(Doc. # 29 at 11-12, 15-17, 18-23).

In other words, Defendants primarily dispute the facts alleged in the operative Complaint, relying on the multiple exhibits attached to their Motion. Plaintiffs appear to

object to the Court taking judicial notice of these documents. (Doc. # 43 at 6 n.6).

Defendants argue that the Court may rely on these documents as part of its review of the administrator's decision or may take judicial notice of them. For the reasons explained above, the Court does not believe that it is appropriate, at least at this juncture, to undertake a review of the administrator's decision. And the Court further declines to take judicial notice of nearly 1,000 pages of submitted documents. Courts may take judicial notice of documents when the facts therein are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, many of the documents submitted by Defendants are precisely the sort of evidence that might be submitted at summary judgment or at trial and subject to the typical rules for admission. For example, Defendants submit letters of engagement with third parties, presentations on the recordkeeper RFP process, agreements and service fee schedules with the Plans' recordkeepers, and performance information on various investment funds, all in an effort to

undercut Plaintiffs' factual allegations. See, e.g., (Ex. 3(P), (Q-5), (T), (W), (Z), (NN), (RR-4)).

The Court declines to take judicial notice of Defendants' submitted documents, with one exception. See Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997) (recognizing that judicial notice is a "highly limited process" because "the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court"). Because they are cited by and relied on in the Amended Complaint, the Court will take judicial notice of the ERISA Plans at issue in this litigation. See Cervantes v. Invesco Holding Co. (US), Inc., No. 1:18-cv-02551-AT, 2019 WL 5067202, at *11-12 (N.D. Ga. Sept. 25, 2019) (taking judicial notice of a 401(k) plan due to plaintiff's "multiple references to the Plan and reliance on its contents" but declining to take judicial notice of defendant's submitted account statements and fee disclosures).

C.  **Merits arguments**

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104, a plan fiduciary is required to meet a standard of "prudence" in administering the plan holding the participant's retirement assets in a defined

contribution plan. 29 U.S.C. § 1104(a)(1)(B) (requiring fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims").

"An ERISA fiduciary's duty is derived from the common law of trusts." <u>Tibble v. Edison Int'l</u>, 575 U.S. 523, 528 (2015). "A trustee (and thus an ERISA fiduciary) has a continuing duty to monitor . . . investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." <u>Id.</u> (internal citations and quotation marks omitted). This monitoring "is to be done in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved." <u>Id.</u> (internal citations and quotation marks omitted). ERISA empowers a plan participant or beneficiary to sue plan fiduciaries for breach of fiduciary duties. 29 U.S.C. § 1132(a)(2).

Here, Defendants argue that the Amended Complaint must be dismissed because it fails to state a claim of imprudence for three reasons. First, according to Defendants,

Plaintiffs' "inaccurate and inapt fee comparisons" do not permit an inference of imprudence. (Doc. # 29 at 10-17). Second, Defendants argue that the Amended Complaint's "hindsight performance allegations" do not permit an inference of imprudence. (Id. at 17-18). Third, they claim that Plaintiffs do not plausibly allege that the Plans' fiduciaries failed to monitor the recordkeeping fees. (Id. at 18-24).

### 1. Fees, expense ratios, and investment performance

First, Defendants quibble with the accuracy of the fee information pled in the Amended Complaint and argue that, when the "correct expense ratios" are used, the challenged funds actually charged fees *below* the ICI Median. (Id. at 12-13). Moreover, Defendants take issue with Plaintiffs using the ICI Median as a comparator, arguing that because the ICI Median looks to both actively and passively managed funds, it's an inapt comparison. (Id. at 13-14). Similarly, Defendants decry Plaintiffs' comparison of certain Plan funds to "cherry picked" Vanguard index funds because index funds are fundamentally different from actively managed funds, with concomitantly different fee structures. (Id. at 14-15).

Second, Defendants claim that, in 2020, the Plans invested in the lowest-cost share class for six of the nine

investments challenged by Plaintiffs and, further, the difference in cost of the remaining three investments is attributable to permissible revenue sharing. (Id. at 15-17). Third, Defendants argue that Plaintiffs incorrectly use hindsight to plead the underperformance of certain funds and that they are required only to be prudent, not omniscient. (Id. at 17-18).

As the Eighth Circuit has explained, the prudence inquiry is "fact intensive." Tussey, 746 F.3d at 336. The arguments raised by Defendants implicate fact issues that are not appropriate for resolution on a motion to dismiss. See McCool v. AHS Mgmt. Co., Inc., No. 3:19-CV-01158, 2021 WL 826756, at *5 (M.D. Tenn. Mar. 4, 2021) (rejecting similar arguments on a motion to dismiss because such claims "require examination of particular circumstances, specific decisions and the context of those decisions" and, accordingly, "the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss"); see also Nicolas v. Trustees of Princeton Univ., No. 17-3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017) (holding that an inquiry into "whether the alternative funds Plaintiff[s] suggest[] are apt comparisons"' is a question of fact unsuitable for resolution on a motion to dismiss).

The only question before the Court is whether Plaintiffs have pled sufficient facts, taken as true, that meet the requisite pleading standard. Plaintiffs have met that burden here. Other courts have found similar factual allegations sufficient to allege ERISA breach of fiduciary duties claims. See, e.g., Garcia v. Alticor, Inc., No. 1:20-CV-1078, 2021 WL 5537520, at *4 (W.D. Mich. Aug. 9, 2021) (denying motion to dismiss where plaintiffs made similar claims challenging the 401(k) plan's investment selections and fees imposed and, when viewing the complaint as a whole, plaintiffs had pled sufficient facts to support a claim that Defendants breached their fiduciary duties under ERISA); Jones v. Coca-Cola Consol., Inc., NO. 3:20-cv-00654-FDW-DSC, 2021 WL 1226551, at *4 n.3 (W.D.N.C. Mar. 31, 2021) ("Alleging that excessively high fees were charged to plan participants can independently constitute a breach of one's duties of prudence and/or loyalty under ERISA."); In re MedStar ERISA Litig., No. RDB-20-1984, 2021 WL 391701, at *6 (D. Md. Feb. 4, 2021) ("[P]laintiffs' allegations that specific funds underperformed" compared to funds tracking the market plausibly stated a breach of fiduciary duty claim); Kruger v. Novant Health, Inc., 131 F. Supp. 3d 470, 478 (M.C.N.C. 2015) ("[T]he plaintiff alleged that the plan fiduciaries were

utilizing imprudently expensive investment options to the detriment of the plan. Following this logic, present Plaintiffs have stated enough of a claim for breach of fiduciary duty to survive Defendants' motion to dismiss.").

The Third and Eighth Circuits have held that similar allegations in ERISA breach-of-fiduciary-duty cases pass muster, and the Court finds those cases and their progeny to be persuasive. In Sweda v. University of Pennsylvania, the plaintiff claimed that the University of Pennsylvania selected and retained higher cost retail class shares despite the availability of lower-cost institutional class shares; failed to solicit competitive bids to assess the reasonableness of Plan recordkeeping fees; and included a table comparing Plan options with readily available, cheaper alternatives. 923 F.3d 320, 332 (3d Cir. 2019). The Third Circuit held that, "[w]hile Sweda may not have directly alleged how [the University of Pennsylvania] mismanaged the plan, she provided substantial circumstantial evidence from which the District Court could 'reasonably infer' that a breach had occurred." Id. The University of Pennsylvania argued it employed a prudent process, which the Third Circuit described as a merits-based argument "misplaced" at the early motion-to-dismiss stage. Id. at 333.

Similarly, the Eighth Circuit has rejected the argument that a complaint must describe exactly the ways in which the defendants breached their fiduciary duties. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595–96 (8th Cir. 2009). "Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests [] and 'allow [ ] the court to draw the reasonable inference' that the plaintiff is entitled to relief." Id. (citations omitted).

The Eighth Circuit held that:

Braden has satisfied these requirements. The complaint alleges that the Plan comprises a very large pool of assets, that the 401(k) marketplace is highly competitive, and that retirement plans of such size consequently have the ability to obtain institutional class shares of mutual funds. Despite this ability, according to the allegations of the complaint, each of the ten funds included in the Plan offers only retail class shares, which charge significantly higher fees than institutional shares for the same return on investment. . . . The complaint states that appellees did not change the options included in the Plan despite the fact that most of them underperformed the market indices they were designed to track. . . .

The district court correctly noted that none of these allegations directly addresses the process by which the Plan was managed. It is reasonable, however, to infer from what is alleged that the process was flawed. Taken as true, and considered as a whole, the complaint's allegations can be understood to assert that the Plan includes a

> relatively limited menu of funds which were
> selected by Wal-Mart executives despite the ready
> availability of better options. . . . If these
> allegations are substantiated, the process by which
> appellees selected and managed the funds in the
> Plan would have been tainted by failure of effort,
> competence, or loyalty. Thus the allegations state
> a claim for breach of fiduciary duty.

Braden, 588 F.3d at 595-96.

While the Eleventh Circuit has not issued a definite opinion on this subject, several district courts have weighed in. For example, one district court has held that "plaintiffs have properly stated a claim that choosing retail-class shares over institutional-class shares is imprudent. . . . [T]he plaintiffs allege that the defendants did not use their bargaining power to obtain the lower cost fees and that the lower cost options are the exact same as the higher cost shares except for the actual fees charged. The plaintiffs assert that no reasonable fiduciary would choose or be complacent with being provided retail-class shares over institutional-class shares." Henderson v. Emory Univ., 252 F.Supp.3d 1344, 1349-50 (N.D. Ga. 2017) (allowing an ERISA breach-of-prudence claim to proceed where the plaintiffs alleged that the defendants imprudently retained historically underperforming stocks that charged excessive fees when lower cost and higher performing investments were available).

Similarly, here, Plaintiffs have alleged that TriNet's decision-making process in managing the Plans was tainted by imprudence because the decision-making process, or lack of oversight thereof, allowed for the retention of poorly performing investments and investments that charged excessively high fees when other options were available to the Plans.

While Defendants take issue with the fact that Plaintiffs have not pointed to any specific flaw in their decision-making process, the Court is persuaded that the Plaintiffs need not do so at this stage of the litigation. See Pizarro v. Home Depot, Inc., No. 1:18-CV-01566-WMR, 2019 WL 11288656, at *3 (N.D. Ga. Sept. 20, 2019) (refusing to place a similar burden on plaintiffs at the motion to dismiss stage, writing that "plaintiffs may rely on circumstantial factual allegations to show a flawed process—particularly one that involves the fiduciaries management of underperforming investments").

Lastly, Defendants argue that Plaintiffs' chosen benchmarks of measuring the funds' performance or their expense ratios is insufficient or inapt. (Doc. # 29 at 12-13, 18 n.35). However, the appropriate benchmarking period is a factual dispute that cannot be resolved at the motion-to-

dismiss stage. See Sacerdote v. New York Univ., No. 16-CV-6284 (KBF), 2017 WL 3701482, at *10 (S.D.N.Y. Aug. 25, 2017) (finding question of performance benchmarks raised factual questions inappropriate for resolution at motion to dismiss stage and that claim survived because plaintiffs a long record underperformance along with allegations of inaction).

In sum, the thrust of Defendants' Motion to Dismiss is that Plaintiffs' claims are factually incorrect or rely on inapt comparators and that it complied with all of its statutory obligations under ERISA. But as the Eighth Circuit has explained, "there may well be lawful reasons appellees chose the challenged investment options [but] it is not [plaintiff's] responsibility to rebut these possibilities in his complaint[]." Braden, 588 F.3d at 596. Such factual disputes are better resolved at a later stage of the litigation.

### 2. **Recordkeeping Fees**

According to the Amended Complaint, "recordkeeping" refers to the administrative services provided by a third party to a defined contribution plan, such as providing account statements to participants. (Doc. # 23 at ¶ 98). Recordkeeping expenses can be paid either directly from plan assets or indirectly through a process known as revenue

sharing. (Id. at ¶ 100). As the Amended Complaint explains it: "Revenue sharing payments are payments made by investments within the plan, typically mutual funds, to the plan's recordkeeper or to the plan directly, to compensate for recordkeeping and trustee services that the mutual fund company otherwise would have to provide." (Id.).

Plaintiffs allege that the Plans at issue in this matter utilized revenue sharing to pay recordkeeping expenses. (Id. at ¶ 101). They allege that Defendants failed to prudently manage the Plans' recordkeeping costs by failing to obtain lower costs than what was being charged, pointing to other defined contribution plans' recordkeeping expenses. (Id. at ¶¶ 105-09, 112).

While Plaintiffs concede that Defendants "did seek out proposals from various recordkeepers in 2015 and again in 2018, the process they used was clearly deficient" because those searches resulted only in proposals from recordkeepers owned by insurance companies, and it is "well known in the industry that insurance based recordkeepers" are not appropriate for large institutional investors like the Plans. (Id. at ¶¶ 113-15). Accordingly, Plaintiffs allege that "[a] prudent fiduciary would have observed the excessive fees being paid to the recordkeeper and taken corrective action.

Defendants' failures to monitor and control recordkeeping compensation cost the Plans millions of dollars per year and constituted breaches of the duty of prudence." (Id. at ¶ 116).

Pointing to their submitted evidence, Defendants argue that the Plans participated in a "competitive" request for proposal ("RFP") process in 2015 and a request for information ("RFI") process in 2018 in order to find qualified recordkeepers. (Doc. # 29 at 18-19). Further, once it narrowed the field to three potential recordkeepers, the Plans "thoroughly analyzed" the finalists' services and pricing before selecting Transamerica as the recordkeeper for the TriNet 401(k) Plan and MassMutual for the TriNet Select 401(k) Plan. (Id. at 19). Since, according to Defendants, Plaintiffs do not and cannot challenge the thoroughness of the process used to select the recordkeepers, they instead focus on a comparison of their "estimate of the Plans' recordkeeping fees to two industry-wide surveys of single-employer plans." (Id. at 20). This is inappropriate, Defendants argue, because recordkeeping fees must be evaluated in light of the specific services that were rendered. (Id.).

Defendants also argue that the recordkeeping fees included in the Amended Complaint are wrong, that the Amended Complaint misconstrues the very surveys it relies on, and,

moreover, "there is no legal support for the allegation that insurance-based recordkeepers are per se imprudent, and it cannot be the case that 13% of plans with over $1 billion in assets (and 49.5% of all plans) have breached their fiduciary duties merely by hiring insurance-based recordkeepers." (Id. at 22-23).

These arguments, once again, raise factual questions that are not appropriate for this Court to resolve at the motion to dismiss stage. See Cassell v. Vanderbilt Univ., 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018) ("The question whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss."); see also Santiago v. Univ. of Miami, No. 1:20-CV-21784, 2021 WL 1173164, at *4 (S.D. Fla. Mar. 1, 2021), report and recommendation adopted, No. 1:20-CV-21784, 2021 WL 1165441 (S.D. Fla. Mar. 26, 2021) (pointing out the "fact-intensive inquiries" necessary to resolve the parties' dispute around recordkeeping fees and refusing to take up such a dispute on a motion to dismiss).

Furthermore, Defendants' argument that Plaintiffs failed to plead which specific services were offered to the Plans has been rejected by other courts. See Kruger, 131 F. Supp. 3d at 479 ("While Defendants claim that Plaintiffs have not

alleged facts regarding why the amount of the recordkeeping fees are excessive, the services provided, or how the fees charged to the Plan were excessive in light of those services, this court finds that those are the types of facts warranting discovery, and, therefore, dismissal at this stage is not appropriate.").

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion to Dismiss the Amended Complaint (Doc. # 29) is **DENIED.** Defendants are directed to file their answer to the First Amended Complaint within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>10th</u> day of January, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE