# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| SHIQIONG HUANG, CHRIS R. STOKOWSKI, EVERETT UHL, MARK J. HEARON and MARY T. PATTERSON, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 8:20-cv-02293-T-33TGW |
| v. | |
| TRINET HR III, INC., TRINET HR IV, INC., THE BOARD OF DIRECTORS OF TRINET HR III, INC., THE BOARD OF DIRECTORS OF TRINET HR IV, INC., THE INVESTMENT COMMITTEE OF TRINET GROUP, INC., and JOHN DOES 1-30, | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| Defendants. | |

Plaintiffs Shiqiong Huang, Chris R. Stokowski, Everett Uhl, Mark J. Hearon, and Mary T. Patterson (collectively, "Plaintiffs"), individually and on behalf of the TriNet 401(k) Plan ("TriNet III Plan") and the TriNet Select 401(k) Plan ("TriNet IV Plan") (referred to collectively as either "Plan" or "Plans"), respectfully submit this Motion for Class Certification (the "Motion") and hereby move this Court, pursuant to FED. R. CIV. P. 23, for an Order certifying this action ("Action") as a class action,

1

appointing Plaintiffs as representatives of the proposed class defined below ("Class"), and appointing Plaintiffs' counsel as counsel for the Class ("Class Counsel").[1]

# I.   INTRODUCTION

Plaintiffs allege claims under ERISA[2]§ 502(a)(2) for breaches of fiduciary duty of the type routinely certified in this Circuit and courts throughout the country.  *See, e.g.*, *Pizarro v. Home Depot, Inc.*, 2020 WL 6939810, at 1 (N.D. Ga. Sept. 21, 2020) (class certification granted in analogous ERISA matter); *In re Suntrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016) (same).[3]  Indeed, "[i]n light

---

[1] All undefined terms herein shall have the same meaning as defined in the First Amended Complaint ("Complaint" or "Am. Cmplt.") (ECF 23).

[2] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

[3] Many other recent decisions have certified classes in ERISA actions alleging breach of fiduciary duty due to inclusion of imprudent investment options in retirement plans.  *See, e.g. Karg v. Transamerica Corp.*, 2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) (certifying class alleging  defendants breached fiduciary duties by selecting poorly performing investment options); *Vellali v. Yale Univ.*, 33 F.R.D. 10 (D. Conn. 2019) (certifying class in case alleging fiduciaries saddled retirement plan with investment options that charged excessive management fees); *Cunningham et al. v. Cornell Univ.*, 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) (same); *Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) (same); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) (same); *Leber, et al., v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) (same); *Moreno, et al., v. Deutsche Bank Ams. Holding Corp.,* 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) (same); *Henderson, et al., v. Emory Univ., et al.*, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) (certifying class under 23(b)(1)(A) and (B));  *Clark v. Duke Univ.*, 2018 WL 1801946 (M.D.N.C. April 13, 2018) (same); *Sacerdote v. New York Univ.*, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) (certifying class and subclasses pursuant to Rule 23(b)(1)(A)); *Wildman v. Am. Century Servs., LLC,* 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) (certifying class and subclasses pursuant to Rule 23(b)(1));  *Marshall, et al., v. Northrop Grumman Corp.*, 2017 WL 6888281 (C.D. Cal. Nov. 2, 2017) (certifying class and subclasses pursuant to Rules 23(a) and 23(b)(1)); *Sims v. BB&T Corp.*, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) (same); *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149 (N.D. Cal. July 26, 2017) (certifying class and subclasses pursuant to Rule 23(b)(1)); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678 (C.D. Cal. June 15, 2017) (same);  *Rozo v. Principal Life Ins. Co.*, 2017 WL 2292834 (S.D. Iowa May 12, 2017) (certifying class and subclasses pursuant to Rules 23(a) and Rule 23(b)(1)(A)); *In re: Merck & Co., Inc., Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009);  *Stanford* v. *Foamex, L.P.*, 263 F.R.D. 156, 175 (E.D. Pa. 2009); *In re: Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451 (D.N.J. Dec. 16, 2010); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 538 (E.D. Pa. 2010); *Cunningham, et al. v. WAWA, Inc., et al*, 387 F.Supp.3d 529 (E.D. Pa. 2019); *Yost v. First Horizon Nat'l Corp.*, 2011 WL 2182262, at *64, n. 82 (W.D. Tenn. June 3, 2011)

of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *Gamache, et al. v. Hogue, Jr., et al.*, 338 F.R.D. 275, 292 (M.D. Ga. 2021) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)).  Plaintiffs seek to certify the following class pursuant to FED. R. CIV. P. 23(a) and (b)(1):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plans, at any time between September 29, 2014 through the date of judgment (the "Class Period").

Additionally, Plaintiffs respectfully request that this Court appoint them as representatives for the certified Class, and appoint their counsel, Capozzi Adler, P.C., ("Capozzi Adler") as Class Counsel.

As discussed below, Plaintiffs' ERISA claims satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b): (1) there are more than one-hundred thousand participants in the Plans, collectively; (2) Plaintiffs are typical of the participants;  (3) common issues abound regarding the manner in which Defendants managed the Plans' assets;  and (4) Plaintiffs have retained experienced class counsel and are adequate to represent the interests of the class.  Notably, in addition to the

---

(listing cases); *Cassell v. Vanderbilt Univ., et al.*, No. 3:16-cv-02086 (ECF No. 127) (M.D. Tenn. Oct. 23, 2018) (granting plaintiffs' motion for class certification; *Disselkamp v. Norton Healthcare, Inc., et al.*, No. 3:18-cv-00048-GNS-CHL (ECF No. 120) (W.D. Ky. March 1, 2021) (same); *Shanehchian v. Macys, Inc., et al.*, 2011 WL 883659 (S.D. Ohio March 10, 2011) (same); *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) (same); *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) (same); *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) (same).

decisions cited above, dozens of ERISA actions alleging similar breaches of fiduciary duty have been certified in this Circuit and throughout the country.[4]   The same is warranted here.

## II.    STANDARD FOR CLASS CERTIFICATION

Plaintiffs must show that the class satisfies the four prerequisites of Rule 23(a) (commonly referred to as numerosity, commonality, typicality, and adequacy), and that it "satisfies at least one of the class types under Rule 23(b)."   *Rivera v. Equifax Info. Services., LLC*, 2022 WL 986443, at *6 (N.D. Ga. Mar. 30, 2022) (*Sellers v. Rushmore Loan Mgmt. Services, LLC*, 941 F.3d 1031, 1039 (11th Cir. 2019)).   The Supreme Court has acknowledged the virtues of the class action device and the utility of FED. R. CIV. P. 23 in bringing private rights of action.   *See, e.g.*, *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) ("[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (noting that Congress expressed intent that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole").   "A class action 'may only be certified if the trial court

---

[4] *See* Exhibit G to the accompanying Declaration of Mark K. Gyandoh (the "Gyandoh Decl.") (a non-exhaustive list of decisions certifying classes in ERISA breach of fiduciary duty actions like the instant action brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), including at least 25 decisions certifying classes in "excessive fee" suits).   All Exhibits referenced herein are attached to the Gyandoh Declaration.

is satisfied, after a rigorous analysis, that the[se] prerequisites of Rule 23(a) have been satisfied.'" *Sellers*, 941 F.3d at 1039.

Although courts must conduct a "rigorous" analysis of the Rule 23 elements, this is not a "license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S.Ct. 1184, 1194–95 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

### III.   STATEMENT OF FACTS

#### A. Nature of the Plan

TriNet Group, Inc. ("TriNet") is the Plan sponsor and a named fiduciary of the Plans.  Gyandoh Decl. at ¶ 52 (citing TriNet Group, Inc. 401(k) Investment Policy Statement, dated October 6, 2015, at 1 ("2015 IPS"); Defined Contribution Plan Investment Policy Statement, dated August 19, 2021, at 1 ("2021 IPS") (HUANG-TRINET_0011093)).  The Plans enable their participants to invest money contributed from their salary or employer matching funds in a number of investment options. Gyandoh Decl. at ¶ 53 (citing Summary Plan Description of the TriNet 401(k) Plan for Employees of Alignment Healthcare USA, LLC, dated June 2014) ("2014 SPD") (HUANG-TRINET_0000538); Summary Plan Description of the TriNet 401(k) Plan for Employees of ABA Support Services, LLC, dated October 2015 ('2015 SPD") (HUANG-TRINET_0013366); Summary Plan Description for TriNet Select 401(k) Plan, dated January 1, 2017, at 4 ("2017 SPD"); 2021 IPS at 1 (HUANG-

TRINET_0011093).  Plan participants and beneficiaries are able to "direct their own investment and investment changes."  Gyandoh Decl. at ¶ 53 (citing 2015 SPD at 11). The Plans' Committee purportedly selects and monitors Plan investment options. Gyandoh Decl. at ¶ 55 (citing 2015 SPD at 5).

### B.  Defendants Were Fiduciaries of the Plan

TriNet appointed the Committee.  Gyandoh Decl. at ¶ 56 (citing 2015 IPS at 1). Among other things, "[t]he Committee is responsible for selecting the trustee(s); hiring the recordkeeper; hiring the investment consultant(s); selecting the investment option(s), and selecting the default investment(s) to be used when a participant or beneficiary fails to provide investment direction."  Gyandoh Decl. at ¶ 57 (citing 2015 IPS at 2).

Although not a Defendant in this action, several entities have a role in this litigation.  Gyandoh Decl. at ¶ 58.  During the Class Period, the TriNet IV Plan's recordkeeper is/was Massachusetts Mutual Retirement Services and/or Massachusetts Mutual Life Insurance Company (collectively, "MassMutual"). Gyandoh Decl. at ¶ 59 (citing Defendants' Responses & Objections to Plaintiffs' First Set of Interrogatories) ("Defs. Resp. to First Interrog.").  Further, during the Class Period, the TriNet III Plan's recordkeeper is/was Transamerica Retirement Services Corporation.  Gyandoh Decl. at ¶ 60 (citing Transamerica Retirement Service Corporation Application and Agreement for Services Multiple Employer Plan Service Fee Schedule, dated Nov. 6, 2015).

Additionally, in 2014, the Plans' investment advisor was NFP Retirement, Inc. Gyandoh Decl. at ¶ 61 (citing Defs. Resp. to First Interrog.).  In 2015, Defendants selected DiMeo Schneider & Associates ("DiMeo Schneider"), now doing business as Fiducient Advisors, to provide investment consulting services to the Plans.  Gyandoh Decl. at ¶ 62 (citing Defs. Resp. to First Interrog.).

At the end of 2019 and 2018, the TriNet III Plan had over $4 billion dollars and $2.9 billion dollars, respectively, in assets under management that were/are entrusted to the care of the Plans' fiduciaries.  Gyandoh Decl. at ¶64 (citing TriNet 401(k) Plan, Financial Statements and Supplemental Schedules, Year Ended December 31, 2019; TriNet 401(k) Plan, Financial Statements and Supplemental Schedules, Year Ended December 31, 2018).  At the end of 2019 and 2018, the TriNet IV Plan had over $1.4 billion dollars and $1.2 billion dollars, respectively, in assets under management that were/are entrusted to the care of the Plans' fiduciaries. Gyandoh Decl. at ¶ 65 (citing TriNet Select 401(k) Plan, Financial Statements and Supplemental Schedules, Year Ended December 31, 2019; TriNet Select 401(k) Plan, Financial Statements and Supplemental Schedules, Year Ended December 31, 2018).

### C. Named Plaintiffs

Defendants admit each of the Named Plaintiffs was a participant in the Plans during the Class Period and were invested in some investment options in the Plans. Defendants Answer to First Amended Class Action Complaint (ECF No. 54) ("Defs. Answer") at ¶¶ 17-21.  Plaintiff Shiqiong Huang was a participant in the TriNet Select 401(k) Plan during the Class Period and was invested in the options offered by the

Plan, and which are the subject of this lawsuit, including the JP Morgan Small Cap Growth fund, and was subject to the Plan's unreasonably excessive recordkeeping fees. *See* Gyandoh Decl. ¶ 78; Exhibit H, ¶ 5 (Declaration of Shiqiong Huang) ("Huang Decl."). Plaintiff Chris R. Stowkowski was a participant in the TriNet Select 401(k) Plan during the Class Period and was invested in the options offered by the Plan, and which are the subject of this lawsuit, including the JP Morgan Small Cap Growth, DFA US Small Cap Value Fund, American Funds New Perspective, American Funds EuroPacific Growth funds, and was subject to the Plan's unreasonably excessive recordkeeping fees. *See* Gyandoh Decl. ¶ 79; Exhibit I, ¶ 5 (Declaration of Chris R. Stokowski) ("Stokowski Decl."). Plaintiff Everett Uhl was a participant in the TriNet Select 401(k) Plan during the Class Period and was invested in the options offered by the Plan and was subject to the Plan's unreasonably excessive recordkeeping fees. *See* Gyandoh Decl. ¶ 80; Exhibit J, ¶ 5 (Declaration of Everett Uhl) ("Uhl Decl."). Plaintiff Mark J. Hearon was a participant in the TriNet Select 401(k) Plan during the Class Period and was invested in the options offered by the Plan and which are the subject of this lawsuit, including the JP Morgan Small Cap Growth fund, and was subject to the Plan's unreasonably excessive recordkeeping fees. *See* Gyandoh Decl. ¶ 81; Exhibit K, ¶ 5 (Declaration of Mark J. Hearon) ("Hearon Decl."). Plaintiff Mary T. Patterson was a participant in the Plan during the Class Period and was invested in the options offered by the Plan and was subject to the Plan's unreasonably excessive recordkeeping fees. *See* Gyandoh Decl. ¶ 82; Exhibit L, ¶ 5 (Declaration of Mary T. Patterson) ("Patterson Decl.").

## IV.   PLAINTIFFS ASSERT VIABLE CLAIMS AND THE CLASS IS ASCERTAINABLE

Plaintiffs' alleged facts are set forth in the Complaint and the Gyandoh Declaration.  *See* ECF No. 23; Gyandoh Decl. ¶¶ 16-35.  In short, the Plans play a central role in the retirement planning for Plaintiffs and the other Class members. Accordingly, the prudent selection and monitoring of the investment options, and monitoring of recordkeeping and administration fees, by the Committee is crucial to fulfill the purpose of the Plans.  Gyandoh Decl. ¶¶ 54-55 (citing 2015 IPS at 1).

In the Complaint, Plaintiffs assert the following claims: (1) Count I against the Committee Defendants for their failure to prudently manage the Plans' assets because they selected and retained investment options in the Plans despite the high cost of the funds in relation to other comparable investments, Am. Cmplt. ¶¶ 57- 96, and failed to prudently monitor the Plans' recordkeeping fees, ¶¶ 97-116; and (2) Count II against the Monitoring Defendants for breach of their fiduciary duties to adequately monitor the Prudence Defendants.  Am. Cmplt. ¶ 128.

Fact discovery is now closed.  Plaintiffs deposed 3 members of the Committee, including a 30(b)(6) deposition of TriNet's corporate designee.  Gyandoh Decl. ¶ 57. The depositions confirm the viability of Plaintiffs' claims.  Nonetheless, Plaintiffs understand there may be disputed issues of fact.  As set forth below, the claims here are ideally suited for class treatment.  The Parties are presently engaged in expert discovery.

"[C]ourts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 679 (N.D. Ga. 2016) (quoting *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Ala. 2010)). "Here, the criteria for each of Plaintiffs' proposed class definitions 'is objective and the identification of its members is administratively feasible via the Plans' participant records." *Pizarro*, 2020 WL 6939810, at *4; *Henderson*, 2018 WL 6332343, at * 4.

## V.   ARGUMENT

### A. Plaintiffs Have Standing to Pursue Claims On Behalf of the Plan

A suit under 29 U.S.C. §1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole," and remedies under §1109 "protect the entire plan." *Braden v. Wal-Mart Stores, Inc*, 588 F.3d 585, 593 (8th Cir. 2009). Thus, plaintiffs in an ERISA case like this one may seek recovery on behalf of the ***entire plan***, even if they did not personally invest in every one of the funds that caused injury. The court in *Clark v. Duke University*, 2018 WL 1801946 (M.D.N.C. April 13, 2018), an analogous ERISA action, explained it this way:

> The cases cited by the defendants do not require a different conclusion. Those cases involve allegations that the ERISA fiduciaries breached their duties in buying or keeping specific funds in which the named plaintiff did not invest.
>
> ****
>
> That is not the case here, where the plaintiffs are invested in some of the challenged funds and where they allege that the breach of fiduciary duty arose from the overall decision-making processes, or lack thereof.

> 'At bottom, the gist of the question of standing is whether [plaintiffs] have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'

*Id.* at * 4-5 (quoting *Massachusetts v EPA,* 549 U.S. 497, 517 (2007)); *see also Cassell*, 2018 WL 5264640 at * 3 (while certifying class, observing that like Plaintiffs here, "[p]laintiffs allege that Defendants failed independently to evaluate investment options and adequately to monitor those investments, resulting in injuries to the Plan…. [The plaintiffs] were invested in only some of those allegedly imprudent funds. To the extent this allegedly imprudent practice of Defendants resulted in investment in allegedly imprudent funds, participants in those funds were injured."). Nearly all courts that have examined the issue are in accord.[5] Here, each of the Plaintiffs is a former participant in the Plan, participated in at least one of the challenged funds, and/or were subjected to the Plan's excessive recordkeeping fees. *See* Huang Decl., ¶ 5; Stokowski Decl., ¶ 5; Uhl Decl., ¶ 5; Hearon Decl., ¶ 5; Patterson Decl., ¶ 5. Plaintiffs

---

[5] *See, e.g.*, *Hay v. Gucci America, Inc., et al.*, 2018 WL 4815558, at * 4 (D.N.J. Oct. 3, 2018) ("Although in certain types of matters, courts have found that a plaintiff cannot suffer an injury from an investment that he or she did not purchase, 'courts have declined to apply the above bright-line rule when addressing ERISA claims for breach of fiduciary duties.'") (citation omitted); *Beach v. JPMorgan Chase Bank, Nat'l Assn.,* 2019 WL 2428631, at *5 (S.D.N.Y. June 11, 2019) (finding plaintiffs had standing to assert claims related to funds in which they did not invest); *Larson v. Allina Health Sys.*, 350 F.Supp. 3d 780, 792 (D. Minn. 2018) (same); *Johnson v. Providence Health & Services, et al.*, 2018 WL 1427421, at * 4 (W.D. Wash. Mar. 22, 2018) (same); *Johnson et al. v. Fujitsu Tech. and Bus. of Am., Inc.*, 250 F.Supp. 3d 460, 465 (N.D. Cal. Apr. 11, 2017) (same); *Leber v. Citigroup 401(k) Plan Investment Committee*, 2017 WL 5664850, at * 6 (S.D.N.Y. Nov. 27, 2017) (same); *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) (same); *Tussey v. ABB, Inc.*, No. 06-cv-4305, 2007 WL 4289694, *2 (W.D. Mo. Dec. 3, 2007) (same); *McDonald v. Jones*, 2017 WL 372101, at * 3 (E.D. Mo. Jan. 26, 2017) (same); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *4-5 (C.D. Cal. Aug. 5, 2016) (same).

also allege "[a]s a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans suffered millions of dollars of losses due to excessive costs and lower net investment returns" and "[h]ad Defendants complied with their fiduciary obligations, the Plans would not have suffered these losses, and Plans participants would have had more money available to them for their retirement."  Am. Cmplt. at ¶ 121.  Accordingly, Plaintiffs have standing to pursue the Plans and class members' claims.

### B. The Proposed Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a)

A class must first satisfy the four basic prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  FED. R. CIV. P. 23(a); *Rivera*, 2022 WL 986443, at *6.  Plaintiffs have satisfied all four elements of Rule 23(a).

### 1. The Proposed Class Satisfies the "Numerosity" Requirement of 23(a)(1)

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  With over 94,000 Plan participants in the TriNet 401(k) Plan and over 16,000 participants in the TriNet Select 401(k) Plan, this factor is easily satisfied.[6]  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546,

---

[6] *See* Gyandoh Decl. ¶ 16.

1553 (11th Cir. 1986) (finding "while there is no fixed numerosity rule," classes of more than forty members generally satisfy numerosity).

### 2.  The Class Satisfies the "Commonality" Requirement of 23(a)(2)

Commonality concerns "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (resolution of issue must "advance the litigation."). Commonality "does not require that all the questions of law and fact raised by the dispute be common or that common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). "Even a single common question will do." *Dukes*, 564 U.S. at 359 (cleaned up). "Variations in the circumstances of class members are acceptable, as long as they have at least one issue in common." *Bacon*, 370 F.3d at 570).

"The commonality requirement is particularly easy to meet when the defendant has engaged in a course of conduct which gives rise to a single cause of action." *Nortel*, 2009 WL 3294827, *5. Typically, "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Shirk*, 2008 WL 4425535, *2 (quoting *Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y. 2002)).

Here, the overarching questions of law and fact applicable to all Plan participants are whether Defendants breached fiduciary duties owed to the Plans and

their participants by: selecting and retaining investment options in the Plans despite the high cost of the funds in relation to other comparable investments;  failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plans; and failing to monitor or control the compensation paid for recordkeeping and administration services.  Moreover, as noted herein, all Plan participants were subject to the Committee's decisions about selection of Plan investments. *See Wal-Mart*, 564 U.S. at 355.  All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all "are focused solely on Defendants and their actions, and will require the same proof for all class members."  *Nortel*, 2009 UWL 3294827, *8. Consequently, "[t]he commonality requirement is satisfied when there is at least one common question." *Pizarro,* 2020 WL 6939810, *8.

### 3.  Plaintiffs' Claims Satisfy the "Typicality" Requirement of 23(a)(3)

Under FED. R. CIV. P. 23 (a)(3), Plaintiffs also must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23 (a)(3).  Typicality is met when the plaintiffs' "claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class."  *Belton v. Georgia*, 2011 WL 925565, at * 5 (N.D. Ga. Mar. 14, 2011). "The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories."  *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (internal citations omitted).

Here, Plaintiffs easily satisfy the typicality prong of Rule 23 because "[a]s common investors in the Challenged Funds, plaintiffs and proposed class members

allege similar harm resulting from defendants' alleged fiduciary breaches.  In fact, the harm may be identical." *Karg*, 2020 WL 3400199, at * 3;  *see also Stanford*, 263 F.R.D. at 167 (finding typicality requirement satisfied "because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members");  *Sims v. BB&T Corp.*, 2017 WL 3730552, at*4 (M.D.N.C. Aug. 28, 2017) (finding typicality where "each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the [p]lan's investments" and where "the remedial theory . . . is identical for the named plaintiffs and the class members.") (citations omitted).

### 4. Plaintiffs Will Adequately Protect the Interest of the Class, Satisfying Rule 23(a)(4)

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23(a)(4).  When considering the adequacy of a class representative, the Eleventh Circuit considers: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (internal citation omitted).

### a. Plaintiffs Are Adequate Class Representatives

A representative need not have detailed knowledge of the facts, particularly in complex cases "in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal

knowledge[.]" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003); *Baffa v. Donaldson*, 222 F.3d 52, 61 (2d Cir. 2000)( noting Supreme Court has "expressly disapproved" attacking "the adequacy of a class representative based on the representative's ignorance."). The more important factor is whether the plaintiff is willing and able to devote time to the case by participating in discovery. *See Nortel*, 2009 WL 3294827, *13 (plaintiffs adequate where they maintained contact with counsel, reviewed complaint, and generally understood the claims).

Further, the interests of all Plan participants are aligned because the named Plaintiffs "have identical legal and effectively identical financial interests in this action as do the proposed class members" *Sacerdote*, 2018 WL 840364, *4. Plaintiffs have no interests antagonistic with each other, the Class, or any segment of the Class. To the contrary, Plaintiffs' interests are identical to those of the Class. Named Plaintiffs seek to establish Defendants breached their fiduciary duties by continuing to offer inferior investment alternatives and pay excessive recordkeeping fees which caused the Plans and their participants an economic loss. As such, each member of the proposed Class, just like the Named Plaintiffs, has a similar interest in recovering losses suffered by the Plans as a result of the conduct of the Defendants. In other words, Plaintiffs, like all Class members, were participants during the Class Period, and they seek Plan-wide relief for Defendants' identical breaches of fiduciary duty that equally affected similarly situated participants, as discussed above. *See, e.g.*, *Stanford*, 263 F.R.D. at 171("Because Stanford is challenging the same course of conduct and seeking the same relief as the rest of the absent class members, the court finds that Stanford's interests

are sufficiently aligned with the those of the class."); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 192 (W.D. Mo. 2009) ("There is no indication that [plaintiff's] interests are antagonistic to those of the class (citation omitted). . . .Again, in an action seeking to recover on behalf of a plan, the focus is on the impact of the defendants' actions on that plan. Indeed [plaintiff] has an incentive to maximize recovery to the Plan because she will be affected.").

Plaintiffs must prove the same wrongdoing by Defendants as any and every absent Class member would need to show to establish Defendants' liability. Moreover, each Plaintiff has confirmed that they are ready, willing, and able to fulfill the duties required of a class representative. Each Plaintiff has submitted a declaration attesting to their efforts to date and confirming their desire to serve as a representative of the Class. Up to this point in this litigation, they have: reviewed the allegations in the Complaint and Amended Complaint and provided information to counsel prior to the initiation of this action; provided documents and assisted counsel in discovery matters; maintained regular communication with counsel in order to stay informed about the case; and presented for a deposition. *See* Huang Decl., ¶ 9; Stokowski Decl., ¶ 9; Uhl Decl., ¶ 9; Hearon Decl., ¶ 9; Patterson Decl., ¶ 9. As noted in their declarations, Plaintiffs understand their responsibilities and duties as class representatives and will take all steps necessary to protect the interests of the proposed Class. *See* Huang Decl., ¶¶ 12-13; Stokowski Decl., ¶¶ 12-13; Uhl Decl., ¶ 12-13; Hearon Decl., ¶¶ 12-13; Patterson Decl., ¶¶ 12-13. Courts have relied upon similar declarations as evidence of the named plaintiffs' adequacy. *See, e.g., Pizarro*, 2020 WL

6939810, at *11 (finding plaintiffs "demonstrated their willingness and ability to serve as class representatives" by responding to discovery requests, presenting for depositions, and submitting affidavits); *Karg*, 2020 WL 3400199, at * 3 (noting plaintiffs "have submitted signed declarations to the Court attesting to their active participation here, their willingness to undertake additional responsibility, and their understanding of their role as class representatives to fairly and adequately protect the class members' interests."); *Henderson,* 2018 WL 6332343, at *7 (finding adequacy prong met where, among other things, plaintiffs "submitted affidavits attesting to their participation in [the] action and vowing to vigorously pursue the case."); *Fuller, et al. v. SunTrust Banks, Inc., et al.*, 2018 U.S. Dist. LEXIS 113108, at *17 (N.D. Ga. June 27, 2018) ("Although the affidavits are pro forma documents prepared by counsel, each Plaintiff signed at the bottom acknowledging that the affidavit contained their true contentions"); *Moreno,* 2017 WL 3868803, at * 7 ("Each Plaintiff has filed a declaration attesting that they have reviewed the allegations of the [c]omplaint, are aware that the suit concerns allegations that [d]efendants' investment offerings were improper ...."); *Sims*, 2017 WL 3730552, at *5 (finding adequacy prong met where "[t]he Plaintiffs have declared that they will fairly and adequately represent the interests of the class, Docs. 147-1 to 147-12").

"A class representative need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard.'" *New Directions Treatment Serv. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (quoting *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 119 (D.N.J. 2003)); *see also Jacobs v. Verizon Communications, Inc.*, 2020

WL 5796165, at * 9 (S.D.N.Y. Sept. 29, 2020) (finding adequacy met where "Plaintiff is 'aware of fundamental aspects of the case,' and that she has 'demonstrat[ed] [an] interest in the litigation [that] is considerable.'"); *Pizarro*, 2020 WL 6939810, *13 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) ("In a complex case, such as this, which requires a 'great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case[.]'")

Here, the evidence demonstrates Plaintiffs possess more than a "minimal degree of knowledge" necessary to satisfy the adequacy requirement. As addressed *supra*, Plaintiffs' declarations acknowledge Plaintiffs' intents to represent the interests of the class until the conclusion of this case. Huang Decl., ¶¶ 12-13; Stokowski Decl., ¶¶ 12-13; Uhl Decl., ¶¶ 12-13; Hearon Decl., ¶¶ 12-13; Patterson Decl., ¶¶ 12-13.

Plaintiffs' deposition testimony demonstrated an understanding of the claims[7] and

active participation in the lawsuit with the intent to represent the class.[8]

---

[7] Gyandoh Decl., Exhibit M, Huang Dep. Tr. p. 183:18-21, 184:1-7 ("Q: What are your claims against TriNet, the TriNet defendants in your own words? A: Okay, so the first thing is, like, for the – for some of the funds which is charged higher.  I know that they have same the same funds that charge lower.  And secondly, like, for some of the funds that charge higher I know that there are other funds, similar funds that charge lower.  And the third thing, their recordkeeping fees as I was told is higher, like they are charging higher recordkeeping fees."); Gyandoh Decl., Exhibit N, Stokowski Dep. Tr. p. 116:9-22 ("Q: What was the high-level overview of the lawsuit? A: There were three things that they had – that we talked about.  One was excessive fees, one was the investments that were chosen were of higher costs with similar investments and that they could have provided other alternative investments that were lower costs. Q: So I think you said three things. I just want to make sure we cover them.  You said they described excessive fees as one and ten higher cost investments as another. Is that correct? A: Yeah, where similar investments were available."); Gyandoh Decl., Exhibit O, Uhl Dep. Tr. p. 119:5-8 ("Q: What do you understand this lawsuit to be about in your own words? A: I understand the lawsuit to be about expensive funds and high administrative fees."); Gyandoh Decl., Exhibit P, Hearon Dep. Tr. p. 60:18-22; 61:1-13 ("Q: What do you understand this lawsuit to be about? A: It's about charging excessive fees for the administration of the fund, the funds themselves. Q: And what – when you say excessive fees, what do you mean by excessive fees? A: The expenses for the funds themselves.  Specifically the – I know I participated in one of the funds mentioned, the J.P. Morgan Small Cap.  The excessive fees for those funds compared to, you know, other funds in other plans with what those, what other firms charge for maintenance fees and accounting fees for those specific, for funds, for mutual funds. Q: So would it be fair to say that you issue with the investment options is that you believe that the fees were excessive? A: Yes."); Gyandoh Decl., Exhibit Q, Patterson Deposition Tr. p. 57:12-17 ("Q: Okay.  If I ask you – what do you understand this lawsuit to be about ultimately? A: To base – we are basically part of a class to act on behalf of a bigger population f folks who were all affected by the high fees and the poor fund choices.").

[8] Gyandoh Decl., Exhibit M, Huang Deposition Tr. p. 181:19-21; 182:1-6 ("Q: And do you understand yourself to has, as a proposed class representative, any responsibility as – A: It's providing document, providing files and be present at deposition or at a … Q: What steps have you taken to keep track of the progress in this lawsuit so far? A: They will send e-mails to inform me of the updates."); Gyandoh Decl., Exhibit N, Stokowski Deposition Tr. p. 123:9-16; 19-21 ("Q: Do you understand your duties as a named plaintiff in a proposed class action lawsuit? A: I do.  Q: What are those? A: To provide any information or documentation that's requests , to show up for thinks like this deposition or to testify at trial. […] Q: What steps have you taken to keep track of the progress in this lawsuit? A: The communications I've had with counsel."); Gyandoh Decl., Exhibit O, Uhl Deposition Tr. p. 120:12-18 ("Q: What are your duties as a named plaintiff in a proposed class action lawsuit in your understanding? A: It's my understanding that I, of course, represent the class.  I should be aware of court filings and I need to appear, for example, in a deposition like this."); Gyandoh Decl., Exhibit P, Hearon Dep. Tr. p. 64:13-18 ("Q: What do you hope to accomplish with this case? A: That for future participants in the plan they were either, I guess not overcharged the excessive fees or given options that didn't charge excessive fees in their 401(k) plans."); Gyandoh Decl., Exhibit Q, Patterson Deposition Tr. p. 57:18-25; 58:1-2 ("So – and what – what would you consider – I guess what resolution are you seeking by bringing this class action lawsuit? A: I'm hoping to prevent this in the future.  I mean, I don't think it's acceptable to have, you know, outrageous fees and/or, you know,

Plaintiffs need not possess an extensive financial background to meet the adequacy requirement.  In fact, all of the Plaintiffs testified that they lack expertise in finance or investing.  *See Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 587 (W.D. Wash. 2008) ("Several decades ago, the Supreme Court remarked that Rule 23 should not be used to 'defeat the ends of justice' by facilitating the dismissal of class action complaints involving unsophisticated named plaintiffs.") (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966)).

Further, in directly analogous actions, courts find plaintiffs, similar to Plaintiffs here, to be adequate.[9]  In sum, Plaintiffs satisfy Rule 23(a)(4)'s adequacy requirement.

### b. Plaintiffs' Counsel Have No Conflicts with the Class, Are Qualified and Experienced, and Will Vigorously Prosecute This Action for the Class

The inquiry into the adequacy of class counsel is now decoupled from the Rule 23(a)(4) inquiry into the adequacy of the class representatives and is analyzed under factors set forth in Rule 23(g).  *Karg*, 2020 WL 3400199, at *5 (citing FED. R. CIV. P. 23) ("If the motion includes a proposal for the appointment of class counsel, set forth with particularity the information the court must consider in assessing proposed class counsel's ability to represent the interests of the class fairly and adequately, as set forth in Federal Rules of Civil Procedure 23(g)(1)(A) and (B).")  Rule 23(g) complements

---

unclear documents for folks, again, who just aren't sophisticated enough to figure things out and/or comfortable to ask question on their own.  There are a lot of people like that.").

[9] *See, e.g.*, *Clark*, 2018 WL 1801946 at *9 (finding plaintiffs met the adequacy requirement); *Wildman*, 2017 WL 6045487, at *5 (same).

the requirement of Rule 23(a) that class representatives adequately represent the interests of class members by focusing on the qualifications of class counsel. Rule 23(g)(1)(A) instructs the court to consider, among other things: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). Rule 23(g) notes a court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

Here, Capozzi Adler satisfies all prerequisites. *First*, Capozzi Adler has done significant work identifying and investigating potential claims in this action. It began its investigation of claims several months before filing suit. Gyandoh Decl., ¶¶ 7-10. This work included requesting documents from the Company pursuant to ERISA § 104(b)(4) and engaging consulting experts. *Id.* *Second,* Capozzi Adler and the undersigned counsel have significant experience handling ERISA matters and have knowledge of the applicable law. *Id.* at ¶¶ 67-74. Mark K. Gyandoh is the chair of the Fiduciary Practice Group at Capozzi Adler and will lead the litigation of this action. *Id.* at ¶¶ 3, 67. He has been litigating ERISA fiduciary breach lawsuits for 17 years and he and Capozzi Adler currently serve as counsel in over two dozen fiduciary breach actions across the country. *Id.* at ¶¶ 67. Capozzi Adler was recently appointed interim or co-lead counsel in several actions pending across the country and have

defeated numerous motions to dismiss and settled analogous cases across the country. *Id.* at ¶¶ 73. Based on the foregoing, Capozzi Adler has the requisite qualifications to lead this litigation. *Third*, Capozzi Adler will commit the necessary resources to represent the class. With three office locations, the firm has been successfully serving clients for over 24 years offering a full range of legal services. *Id.* at ¶ 74.

Accordingly, appointment of Capozzi Adler as Class Counsel is warranted. *See Boley, et al. v. Universal Health Servs., Inc., et al.*, 2021 WL 859399 (E.D. Pa. Mar. 8, 2021) (appointing Capozzi Adler as co-lead counsel in analogous breach of fiduciary duty action); *Karg*, 2020 WL 3400199, at * 3 (appointing class counsel where "plaintiffs' counsel submitted documentation of their own qualifications and commitment.").

## C. The Class May Be Properly Certified Under Section 23(b)(1)

Courts within the Eleventh Circuit "have found certification under Rule 23(b)(1) particularly appropriate in an ERISA fiduciary breach case." *Pizarro*, 2020 WL 6939810, *11; *Henderson*, 2018 WL 6332343, at *4; *Fuller*, 2018 WL 3949698, at *7-8; *Suntrust Banks*, 2016 WL 4377131, at *5-8.

### 1. Certification Under Rule 23(b)(1)(B) is Most Appropriate

Many courts have relied upon Rule 23(b)(1)(B) in certifying classes in analogous cases because it is particularly suited for cases alleging the breach of fiduciary obligations to plaintiffs. Indeed, the Advisory Committee Notes to Rule 23 explicitly instruct that certification under Rule 23(b)(1)(B) is appropriate in "an action which

charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." FED. R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment). *See, e.g.*, *Mehling v. New York Life Ins. Co. et al.*, 246 F.R.D. 467, 478 (E.D. Pa. 2007) (certifying the class pursuant to Rule 23(B)(1)(B) in an ERISA fiduciary duty case); *Nortel*, 2009 WL 3294827, *14-15 (same); *Shanehchian*, 2011 WL 883659, *9-10 (same); *Shirk*, 2008 WL 4425535, *5 (same); *Sacerdote*, 2018 WL 840364, *6 ("Most ERISA class action cases are certified under Rule 23(b)(1)."); *Clark*, 2018 WL 1801946, *9-10 (same). Courts within the Eleventh Circuit "have certified § 502(a)(2) breach of fiduciary duty cases under Rule 23(b)(1)(B)." *Pizarro*, 2020 WL 6939810, *13; *Henderson*, 2018 WL 6332343, at *9 (same); *Suntrust Banks*, 2016 WL 4377131, at *8 (same).

Here, the Complaint alleges breaches of fiduciary duties under ERISA. Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses. Thus, the proposed Class meets the requirements of FED. R. CIV. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class.[10]

## 2. Certification is Also Appropriate under Section 23(b)(1)(A)

Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike . . . or where the [defendant] must treat all alike as a matter

---

[10] *See* Gyandoh Decl., Exhibit G (listing decisions certifying Rule 23(b)(1)(B) classes).

of practical necessity." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted).  This is precisely such a case because the fiduciary duties imposed by ERISA are "duties with respect to a plan" that protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104.  In discharging their duties to the Plans, Defendants, as fiduciaries, were obligated to treat all participants (and all class members) alike.  However, once a court determines that a class of participants and beneficiaries seeking recovery from an ERISA fiduciary satisfies subsection (b)(1)(B) of Rule 23, it is not necessary to consider the alternative subsections of Rule 23(b).  *See, e.g.*, *Koch v. Dwyer*, No. 98-CV-5519, 2001 WL 289972, at *5 n.2 (S.D.N.Y. Mar. 23, 2001) ("Since class certification is proper under Rule 23(b)(1)(B), it need not be determined whether Plaintiff has also satisfied the requirements of Rule 23(b)(1)(A) or 23(b)(2).").

## VI.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court certify this action as a class action under FED. R. CIV. P. 23(a) and (b)(1), appoint Plaintiffs Shiqiong Huang, Chris R. Stokowski, Everett Uhl, Mark J. Hearon, and Mary T. Patterson as representatives for the certified Class, and appoint Capozzi Adler as counsel for the certified Class.

Date: May 23, 2022          */s/ Joseph M. Sternberg          .*
                            Joseph M. Sternberg, ESQ.
                            Florida Bar No.: 122447
                            joseph@landersandsternberg.com
                            (407) 495-1893
                            Fax: (407) 362-6325

722 W. Smith Street
Orlando, FL 32804

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*           .
Mark K. Gyandoh, Esquire
(*Admitted Pro Hac Vice*)
PA Attorney ID # 88587
Gabrielle P. Kelerchian, Esquire
PA Attorney ID #324248
312 Old Lancaster Road
Merion Station, PA 19066
markg@capozziadler.com
gabriellek@capozziadler.com
(610) 890-0200
Fax (717) 233-4103

Donald R. Reavey, Esquire
(*Admitted Pro Hac Vice*)
PA Attorney ID #82498
2933 North Front Street
Harrisburg, PA 17110
 donr@capozziadler.com
(717) 233-4101
Fax (717) 233-4103

Counsel for Plaintiffs and the Putative Class

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2022 a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  /s/ *Mark K. Gyandoh*          
       Mark K. Gyandoh, Esq.