UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SHIQIONG HUANG, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TRINET HR III, INC., *et al.*, <br><br> Defendants. | CASE NO. 8:20-CV-02293-T-33TGW <br><br> **DEFENDANTS' PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Plaintiffs are current or former participants in one of two distinct TriNet-sponsored multiple-employer 401(k) plans: the TriNet 401(k) ("TriNet III") Plan and the TriNet Select 401(k) ("TriNet IV") Plan. Collectively, they seek to certify a single class of all participants and beneficiaries in both Plans since September 29, 2014 for purposes of bringing ERISA fiduciary breach claims on the Plans' behalf. Plaintiffs' motion is defective in two fundamental respects.[1]

*First*, plaintiffs' request to certify a class of participants in the TriNet III Plan should be denied in its entirety because none of the named plaintiffs has standing to pursue fiduciary breach claims on behalf of that Plan with respect to its particular array of investment options and its bespoke recordkeeping arrangement with Transamerica. Among the named plaintiffs, only Mary Patterson participated in the TriNet III Plan during the relevant period—and she neither invested in the funds

---

[1] Plaintiffs' Motion for Class Certification ("Mot.") (ECF No. 66) totaled 27 pages inclusive of all parts and, thus, exceeds the page limitation set forth in Local Rule 3.01.

1

challenged by plaintiffs in their complaint nor paid allegedly excessive recordkeeping and administrative fees (according to plaintiffs' own measure).  Having suffered no injury, Ms. Patterson lacks Article III standing to pursue claims that Defendants breached their fiduciary duties through their selection of investment options or monitoring of recordkeeping costs in the TriNet III Plan.  And without standing, Ms. Patterson—the only named plaintiff subject to the TriNet III Plan's unique investment menu and recordkeeping arrangement—cannot serve as a class representative.  Nor can she satisfy the typicality requirement of Rule 23, because she did not suffer the same purported injury as the class that she seeks to represent.  The Court should therefore deny plaintiffs' request to certify a class that includes TriNet III Plan participants.

*Second*, to the extent plaintiffs intend to pursue claims that certain investment options offered in the TriNet IV Plan should have been removed because of their alleged underperformance (although their recent expert disclosure tenders no opinions on performance-based imprudence and does not enumerate any damages stemming from this claim), their class claims must be limited to those funds the named plaintiffs themselves invested in.  A claim that an investment fund should have been removed from a plan because of the quality of its performance raises questions and implicates proof unique to that investment, and courts have held that such claims can be championed on behalf of a plan only by participants who have invested in the challenged option.  Here, the named plaintiffs invested in just four of the nine funds in the TriNet IV Plan that they challenge as imprudent investment

2

selections. Because plaintiffs never invested in the other five funds, the fiduciaries' evaluation of the performance of those funds over time necessarily caused plaintiffs no injury. Courts in this Circuit confronted with similar circumstances have consistently held that plaintiffs are not typical class representatives for claims regarding the performance of funds in which they did not invest. Plaintiffs here have advanced no reason for this Court to depart from that line of precedent.

For these reasons, the Court should grant plaintiffs' motion for class certification with respect to participants in the TriNet IV Plan *only*, and should limit any class claims related to the performance of that Plan's investment options to the four challenged funds in which the named plaintiffs invested. The motion must be denied in all other respects.[2]

## BACKGROUND

### A.   The TriNet Multiple-Employer Plans

TriNet is a professional employer organization and leading provider of human resources expertise, payroll services, and employee benefits to small and medium-sized businesses. First Amended Complaint ("FAC") (ECF No. 23), ¶ 24; Order on Defendants' Motion to Dismiss ("MTD Order") (ECF No. 53) at 2. TriNet offers its client-employers the opportunity to participate in two distinct TriNet-sponsored defined contribution 401(k) plans: the TriNet III Plan and the TriNet IV Plan. FAC

---

[2] Unless noted otherwise, this brief omits all internal citations and quotations.

¶¶ 40–42. The Plans are Multiple Employer Plans ("MEPs")[3] with over 7,975 adopting employers as of 2019. ECF No. 30-3 at 49–75, 78, 107, 123–220. As of the end of 2020, the TriNet III Plan had 103,818 participants and roughly $4.9 billion in assets, while the TriNet IV Plan had 18,200 participants and over $1.8 billion in assets. Declaration of William D. Pollak in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Pollak Decl."), Exs. 1–2 at Schedules H, p. 2.

The Plans are serviced by two recordkeepers, Transamerica (TriNet III Plan) and MassMutual (TriNet IV Plan), who were retained following a competitive Request For Proposal ("RFP") process in 2015. Mot 6; *see* FAC ¶ 113 n.20. The Plans' fiduciaries conducted additional RFP or Request For Information processes in both 2018 and 2021. *See* FAC ¶ 113 n.20; Pollak Decl. Ex. 3 at HUANG-TRINET_0006435 (August 19, 2021 "Recordkeeper RFP Update"). Under the current recordkeeping agreements, each Plan receives a different set of services from each recordkeeper. For example, MassMutual, unlike Transamerica, provides participants in the TriNet IV Plan with (i) "flash reports" that contain updates regarding investment performance, (ii) due diligence reports on the Plan's investment options, (iii) dedicated testing and account administration consultants, and (iv) customized distribution kits for participants who are retiring. ECF No. 30-3 at 277–78. The arrangements are also subject different fee structures—MassMutual

---

[3] An MEP is a retirement plan that is adopted by two or more employers that are unrelated for income tax purposes. FAC ¶ 39. IRS 7.11.7.1(2) (May 30, 2017).

4

collects its service fees from the TriNet IV Plan via an asset-based fee whereas Transamerica charges both a per-participant fee and a contract asset charge. *Compare id.* at 282 (MassMutual), *with id.* at 307–08 (Transamerica).

The Retirement Committee of TriNet Group (the "Retirement Committee") is responsible for selecting and monitoring the Plans' investment options. FAC ¶ 25; MTD Order at 3. As defined contribution plans, the Plans enable participants and beneficiaries to "direct their own investment and investment changes" from within a broad range of available investment options. Mot. 6. The Retirement Committee, with the assistance of an independent professional investment advisor, DiMeo Schneider & Associates, LLC (now named Fiducient Advisors), selected a range of 27 to 32 different options for each of the Plans' investment menus during the relevant period that reflected a broad range of asset classes, risk profiles, expense ratios, and strategies, including both actively- and passively-managed funds. Mot. 5; *see, e.g.*, ECF No. 30-3 at 397–451 (participant fee disclosures). The Retirement Committee adjusted the Plans' lineups as needed over the relevant period based on its appraisal of the performance of the funds and other factors—adding and removing funds, and transitioning to lower-cost alternatives and share classes wherever possible. *See, e.g.*, Pollak Decl. Exs. 4–7 (exemplar Retirement Committee meeting minutes).

### B.     Plaintiffs' Claims

Plaintiffs allege that Defendants breached their fiduciary duties by failing to engage in a prudent process for selecting and monitoring the Plans' investment options and failing to monitor the Plans' recordkeeping fees. MTD Order at 5; FAC

5

¶¶ 117–30. Their claims are premised on three theories. First, plaintiffs allege that a handful of the Plans' investments (mostly "actively-managed" funds) were more expensive than (i) the median expense ratios across all funds (actively-managed funds as well as passively-managed index funds) described in an Investment Company Institute Study ("ICI Median"), (ii) certain index funds, and (iii) alternative share classes of mutual funds employing identical investment strategies. MTD Order at 4; FAC ¶¶ 57–96.[4] Second, plaintiffs allege that, in hindsight, some of these same investments underperformed certain cherry-picked index fund alternatives in their trailing 3- and 5-year average returns as of 2020. FAC ¶ 92. Third, plaintiffs contend that the Defendants failed to monitor or control the Plans' recordkeeping expenses. MTD Order at 5.

On May 23, 2022, plaintiffs served only a single expert report in connection with their case in chief—that of Mr. Francis Vitagliano—in which Mr. Vitagliano opines that "[t]he reasonable cost of recordkeeping for the TriNet Plans" over the relevant period should have been "$36 per participant," per year, "or less." Pollak

---

[4] For the TriNet III Plan, plaintiffs allege that the following eight investment options were too expensive: Janus Henderson Triton Ret Acct, American Funds New Perspective Ret Acct, DFA US Small Cap Value Ret Acct, State Street International Index Ret Acct, Invesco International Growth Ret Acct, Vanguard Institutional Target Retirement Income Ret Opt, State Street Emerging Markets Index Ret Acct., and Oakmark International Ret Acct (the "TriNet III Challenged Options"). FAC ¶¶ 64, 73, 90. For the TriNet IV Plan, plaintiffs allege that the following nine investment options were too expensive: JPMorgan Small Cap Growth, American Funds New World, American Funds Europacific Growth, Baird Aggregate Bond, BlackRock High Yield Bond, DFA US Small Cap Value I, Cohen & Steers Realty Shares, PIMCO Low Duration, and Templeton Global Bond (the "TriNet IV Challenged Options"). FAC ¶¶ 65, 74, 91. Plaintiffs also allege that the "Schwab Charles Family Funds - Retirement Government Money Fund" was too expensive, FAC ¶¶ 64, 90, though neither Plan offered such an option.

Decl. Ex. 8 (Vitagliano Report) at 5, 17. Mr. Vitagliano does not offer an opinion regarding the performance of the challenged investment options in either Plan, nor does he purport to calculate any injury or harm supposedly associated with the Retirement Committee's decision to retain those options. *Id.*

  C. **The Named Plaintiffs' Plan Investments**

Five current or former participants in the Plans filed this action. FAC ¶¶ 17–21. Only one of the named plaintiffs—Ms. Patterson—participated in the TriNet III Plan. The remaining four named plaintiffs (the "TriNet IV Plaintiffs") are current or former participants in the TriNet IV Plan. *Id.*

During the three years in which Ms. Patterson participated in the TriNet III Plan, she invested only in the Vanguard Institutional Target Retirement 2015 Fund ("Vanguard 2015 Fund") and a stable value fund, neither of which is among the TriNet III Challenged Options. Pollak Decl. Ex. 9 (Patterson Account Statements). Ms. Patterson paid the following annual recordkeeping and administrative fees during that period in connection with her investment choices:

| **2017** | $12.20 |
|---|---|
| **2018** | $25.80 |
| **2019** | $25.96 |
| **2020** | $0.18[5] |

---

[5] Ms. Patterson also paid distribution fees in connection with the termination of her TriNet III Plan account, but those transaction-specific fees are distinct from the recordkeeping fees plaintiffs challenge. *See* Pollak Decl. Ex. 9 at HUANG-TRINET_0001023–24. Plaintiffs do not challenge the distribution fees associated with liquidating investments in the Plans.

*Id.*; *see id.* ¶¶ 13–14.  The TriNet IV Plaintiffs collectively invested in four of the nine TriNet IV Challenged Options: JPMorgan Small Cap Growth, American Funds New World, American Funds EuroPacific Growth, and DFA US Small Cap Value.[6]  Pollak Decl. Exs. 10–15.

### D. Procedural Background

Plaintiffs initiated this action on September 29, 2020, ECF No. 1, and filed the FAC on August 20, 2021, ECF No. 23.  On January 10, 2022, the Court denied Defendants' motion to dismiss the FAC.  ECF No. 53.  Fact discovery closed on April 22, 2022, and expert discovery is set to close on July 5, 2022.  *See* ECF No. 40.

## LEGAL STANDARD

Class certification is proper only "if the trial court is satisfied, after a rigorous analysis, that [a number of] prerequisites" are met.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  First, the Eleventh Circuit has "emphasized that any analysis of class certification must begin with the issue of standing" and, if a named plaintiff lacks standing, then she cannot be an adequate class representative.  *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *see Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1350 (11th Cir. 2001); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000); *Borg v.*

---

[6] Among the TriNet IV Challenged Options, Mr. Stokowski invested in the JP Morgan Small Cap Growth, American Funds New World, American Funds Europacific, and DFA US Small Cap Value funds, Pollak Decl. Ex. 10 (Stokowski Account Statements); and Mark Hearon and Shiqiong Huang invested in the JP Morgan Small Cap Growth fund, *id.* Exs. 11–14 (Hearon and Huang Account Statements).  Everett Uhl did not invest in any of the TriNet IV Challenged Options.  *Id.* Ex. 15 (Uhl Account Statements).

8

*Phelan, Hallinan, Diamond & Jones, PLLC*, 2017 WL 2226649, at *2 (M.D. Fla. May 22, 2017) (Covington, J.).  To have standing, a plaintiff must establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124–25 (11th Cir. 2019).  A plaintiff must demonstrate Article III standing "for each claim he seeks to press and for each form of relief that is sought."  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

Second, a party seeking certification must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  In particular, the named plaintiffs' claims must be "typical of the claims . . . of the class," such that there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Henderson v. Emory Univ.*, 2018 WL 6332343, at *5 (N.D. Ga. Sept. 13, 2018).  Third, plaintiffs must satisfy "the requirements found in one of the subsections of Rule 23(b)."  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019).  The requirements for a class action are "stringent," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013), and plaintiffs bear the

9

burden of proving that each of these prerequisites has been met, *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984).

## ARGUMENT

### A. Plaintiffs' Bid to Include TriNet III Plan Participants in Their Requested Class Must Be Denied

Ms. Patterson, the only named plaintiff who participated in the TriNet III Plan—and thus the only named plaintiff who was subject to that Plan's unique recordkeeping arrangement and particular assortment of fund options—suffered no harm under any of plaintiffs' theories. Any class certified by the Court therefore may not include TriNet III Plan participants or beneficiaries.

### i. The Sole Plaintiff Who Participated in the TriNet III Plan Has No Standing to Pursue the Plaintiffs' Claims of Injury

Plaintiffs claim that Defendants breached their fiduciary duties by selecting nine investment options for the TriNet III Plan that were allegedly more expensive than or underperformed other available investments. However, there is but a single named plaintiff who participated in the TriNet III Plan, and she did not invest in ***any*** of the TriNet III Challenged Options.[7] Ms. Patterson's sole investments were in the Vanguard 2015 Fund[8] and the Plan's stable value fund, neither of which plaintiffs

---

[7] Needless to say, the TriNet IV Plaintiffs didn't invest in any funds through the TriNet III Plan.

[8] Plaintiffs allege that the Vanguard Institutional ***Retirement Income*** fund was an imprudent investment option (FAC ¶¶ 64, 73, 90), but this indisputably is a different fund from the Vanguard 2015 Fund in which Ms. Patterson invested. Vanguard itself recognizes that the two funds have different objectives, distinct investment strategies, and fundamentally different asset allocations. *See* Pollak Decl. Exs. 16–17 (2015 and 2021 Vanguard Institutional Target Retirement Funds Prospectus excerpts). For example, in 2015, the Vanguard 2015 Fund invested more than half of its assets in equity funds whereas the Vanguard Institutional Retirement Income fund invested less than one-third of its assets in equity. *Id.* Ex. 16 at HUANG-TRINET_0003439, HUANG-TRINET_0003449.

challenge as imprudent investment selections on *any* basis. Thus, Ms. Patterson indisputably did not suffer any harm from her TriNet III Plan investments under any theory advanced in the FAC. In any case, even if plaintiffs had challenged the prudence of offering the Vanguard 2015 Fund in the TriNet III Plan, their own allegations establish that Ms. Patterson could not have been injured by the investment—because the fund's expense ratio during the period in which Ms. Patterson invested was *below* both that of the alleged ICI Median (0.36%, *see* FAC ¶ 64) and the alleged "lower cost alternative" plaintiffs identify (0.12%, *see* FAC ¶ 90). Pollak Decl. Exs. 18–20 (2017–2020 TriNet III Plan participant fee disclosures, reflecting 0.09% expense ratio for Vanguard 2015 Fund).

Plaintiffs also assert that Defendants breached their fiduciary duties by "fail[ing] to prudently manage and control the Plans' recordkeeping and administrative costs." FAC ¶ 105. Plaintiffs' sole affirmative expert witness asserts in his report that "[t]he reasonable cost of recordkeeping for the TriNet Plans" over the relevant period should have been "$36 per participant," per year. Pollak Decl. Ex. 8 (Vitagliano Report) at 17.[9] Ms. Patterson's account statements, however, unequivocally establish that she paid *less than $30* in annual recordkeeping fees

---

As a result, the two investment options generated different returns during the period in which Ms. Patterson participated in the Plan. *See id.* Exs. 18–20 (2017–2020 participant fee disclosures).

[9] Defendants strongly dispute Mr. Vitagliano's expert opinion, and will raise their objections to his qualifications and methodology at the appropriate time. Ms. Patterson's claim, however, fails under her own expert's analysis.

11

during the period in which she participated in the Plan.[10] Thus, even under plaintiffs' own theory, Ms. Patterson did not suffer any cognizable loss, because the amount of recordkeeping fees that she paid in all years during the relevant period fell below the amount that plaintiffs and their expert submit was "reasonable." Indeed, plaintiffs' expert purports to calculate damages using the $36 per participant fee that he asserts is reasonable, thereby conceding that participants (like Ms. Patterson) who paid less than $36 per year were not injured. And, for their part, the TriNet IV Plaintiffs paid administrative fees to an entirely different third-party recordkeeper pursuant to a separate recordkeeping arrangement that encompassed different services. *Compare, e.g.*, *id.* ECF No. 30-3 at 277–79 (MassMutual services), *with id.* at 307–312 (Transamerica Service Fee Schedule, 8/1/2017).

Because neither Ms. Patterson nor the TriNet IV Plaintiffs could have been harmed by any of the challenged conduct with respect to the TriNet III Plan, they lack standing to pursue those claims on behalf of a class of participants in that Plan.[11] *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619–20 (2020); *see Griffin*, 823 F.2d at 1483 ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."); *Santiago v. Univ. of Miami*, 2021

---

[10] As noted on pages 7–8, *supra*, Ms. Patterson joined the TriNet III Plan in Q3 2017 and paid $12.20 in recordkeeping fees in 2017; $25.80 in recordkeeping fees in 2018; $25.96 in 2019; and $0.18 in recordkeeping fees in 2020 before divesting from the Plan. Pollak Decl. ¶¶ 13–14; *see id.* Ex. 9.

[11] The filing of a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016).

12

WL 1173164, at *7–8 (S.D. Fla. Mar. 1, 2021), *R. & R. adopted*, 2021 WL 1165441 (S.D. Fla. Mar. 26, 2021) ("no named plaintiff has standing" because "the Complaint does not explain how the offering of two funds in which they did not invest caused any of them a concrete injury"); *Johnson v. Delta Air Lines, Inc.*, 2017 WL 10378320, at *1–2 (N.D. Ga. Dec. 12, 2017) (plaintiffs failed to demonstrate "concrete and particularized" injury where they were not invested in the challenged investment funds and did not pay the allegedly excessive recordkeeping fees); *Fuller v. SunTrust Banks, Inc.*, 2012 WL 1432306, at *8 (N.D. Ga. Mar. 20, 2012) (plaintiff lacked standing because plaintiff did not describe "how the offering of a fund in which she did not invest caused her a non-speculative injury"), *aff'd on other grounds*, 744 F.3d 685 (11th Cir. 2014); *Stargel v. SunTrust Banks, Inc.*, 968 F. Supp. 2d 1215, 1233 (N.D. Ga. 2013), *vacated and remanded on other grounds*, 791 F.3d 1309 (11th Cir. 2015).[12]  A class of TriNet III Plan participants thus cannot be certified.[13]

---

[12] The cases cited by plaintiffs (Mot. 10–11, n.5) do not compel a different conclusion because, in those cases, the named plaintiffs "invested in *some* of the challenged funds" and allegedly suffered some losses from the challenged conduct. *Clark v. Duke Univ.*, 2018 WL 1801946, at *4–5 (M.D.N.C. Apr. 13, 2018) (emphasis added); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018) (similar); *see also Santiago*, 2021 WL 1173164, at *7–8 (distinguishing *Clark*, *Cassell*, and *Boley* because the named plaintiffs in those cases invested in some of the challenged options).  By contrast, here, none of the named plaintiffs—including the sole plaintiff who participated in the TriNet III Plan—invested in ***any*** of the TriNet III Challenged Options.

[13] At this stage, plaintiffs cannot solve their standing problem by identifying a new plaintiff who participated in the TriNet III Plan without severely prejudicing Defendants.  The deadline for the parties to move to amend their pleadings was December 23, 2021—nearly six months ago—and fact discovery has already been completed.  *See Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (upholding denial of motion to amend after the discovery deadline); *Wells v. Gen. Dynamics Info. Tech. Inc.*, 571 F. App'x 732, 735 (11th Cir. 2014) (same); *Hutson v. Rent-A-Ctr., Inc.*, 209 F. Supp. 2d 1353, 1360 (M.D. Ga. 2001) (denying motion for leave to amend because plaintiffs failed to exercise due diligence), *aff'd*, 37 F. App'x 980 (11th Cir. 2002).

>    *ii.*     *Plaintiffs Cannot Satisfy the Requirements of Rule 23*

Plaintiffs' purported class also cannot be certified as to the TriNet III Plan because plaintiffs cannot satisfy the typicality requirement of Rule 23. "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Courts in this Circuit and elsewhere routinely decline to certify classes championed by plaintiffs who have not suffered the same purported injury as the class. *See, e.g.*, *Falcon*, 457 U.S. at 156 (concluding that named plaintiffs who "suffered no injury . . . [were] simply not eligible to represent a class of persons who did allegedly suffer injury" because their claims were not typical of other class claims); *Thorne v. Accounts Receivable Mgmt., Inc.*, 282 F.R.D. 684, 695 (S.D. Fla. 2012) (same); *see also Hunters Capital, LLC v. City of Seattle*, 2022 WL 1449387, at *13 (W.D. Wash. May 9, 2022) (denying class certification because "[p]laintiffs ha[d] not presented evidence that their experiences and injuries [were] reasonably co-extensive with those of the putative class members.").

Here, none of the named plaintiffs invested in any of the TriNet III Challenged Options.[14] And none of the named plaintiffs paid excessive recordkeeping fees (by plaintiffs' measure) to the TriNet III recordkeeper pursuant to its contract. As the Seventh Circuit has recognized, typicality demands "enough

---

[14] While the TriNet IV Plaintiffs invested in some of the TriNet IV Challenged Options, none of those investment vehicles are or were offered in the TriNet III Plan—indeed, only one of the TriNet III Challenged Options followed the same strategy and used the same investment adviser as a TriNet IV Challenged Option (the DFA US Small Cap Value strategy).

congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group," and, as a result, "a class representative in a defined-contribution case would *at a minimum* need to have invested in the same funds as the class members." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (emphasis added). Plaintiffs fall short of this bar because they did not "suffer the same [purported] injury" as the TriNet III Plan participants that they seek to represent. *See Dukes*, 564 U.S. at 348–49; *Troudt v. Oracle Corp.*, 325 F.R.D. 373, 381 (D. Colo. 2018), *amended*, 2019 WL 1006019 (D. Colo. Mar. 1, 2019); *Martinez-Santiago v. Pub. Storage*, 331 F.R.D. 94, 103 (D.N.J. 2019) (holding that because a named plaintiff "did not suffer the same injury as the class members . . . she is, therefore, not typical of the class"). Indeed, the TriNet IV Plaintiffs were not even subject to the recordkeeping fee arrangement that plaintiffs challenge in the FAC but, rather, received a distinct set of services from a different recordkeeper under an entirely separate fee arrangement. *See, e.g., Bell v. Pension Comm. of ATH Holding Co.*, LLC, 2018 WL 4385025, at *4 (S.D. Ind. Sept. 14, 2018) (declining to certify a class because "[t]he inclusion of two different fee structures, in the proposed class . . . is precisely the type of broad class certification that . . . becomes untenable"). As a result, plaintiffs cannot satisfy the typicality standard of Rule 23 as to the TriNet III Plan.

### B. Plaintiffs' Class Claims That the TriNet IV Challenged Options Were Imprudently Retained Because of Their Unique Performance Histories Must Similarly Be Limited to Options in Which the Named Plaintiffs Invested

Rule 23(c)(1) requires that any class certification order carefully "define the "class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B). In defining the class claims, "a court must consider the propriety of certification in relation to a specific putative class definition and specific putative class claims." *Braggs v. Dunn*, 317 F.R.D. 634, 639 (M.D. Ala. 2016). The class claims must be limited "to those fairly encompassed by the named plaintiff's claims," *Dukes*, 131 S.Ct. at 2550, and a plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought," *Town of Chester, N.Y.*, 137 S. Ct. at 1650. Plaintiffs' proposed class claims for the TriNet IV Plan are overbroad, as they encompass claims regarding the prudence of investment options to which they didn't allocate their accounts, and that turn on proof distinct to those options.

The TriNet IV Plaintiffs collectively invested in only four of the nine TriNet IV Challenged Options.[15] In a defined contribution plan, a participant's individual gains and losses are a function of the investments to which she allocates her plan account. As a result, the TriNet IV Plaintiffs could not have suffered any loss or harm from the fiduciaries' retention of the five TriNet IV Challenged Options in which they did ***not*** invest. In the Eleventh Circuit, courts confronted with this issue

---

[15] The named plaintiffs collectively invested only in the JPMorgan Small Cap Growth, American Funds New World, American Funds EuroPacific Growth, and DFA US Small Cap Value funds. *See* p. 8, *supra*; Pollak Decl. Exs. 10–15.

16

have limited class claims challenging the retention of investment options based on their alleged performance histories to those options in which plaintiffs personally held shares. *See Santiago*, 2021 WL 1173164, at *7–8; *Johnson*, 2017 WL 10378320, at *1; *Fuller*, 2012 WL 1432306, at *8 (N.D. Ga. Mar. 20, 2012); *Stargel*, 968 F. Supp. 2d at 1233; *see also Griffin*, 823 F.2d at 1483. Other courts have ruled similarly. *See Garthwait v. Eversource Energy Co.*, 2021 WL 4441939, at *5–6 (D. Conn. Sept. 28, 2021) ("[C]ourts . . . have denied standing in the defined-contribution context where a plaintiff has not personally invested in the particular underperforming funds at issue."); *In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *1, 10 (S.D.N.Y. Aug. 2, 2021) (dismissing claims related to the mismanagement of funds in which the plaintiffs had not invested); *see also Patterson v. Morgan Stanley*, 2019 WL 4934834, at *4 (S.D.N.Y. Oct. 7, 2019); *In re UBS Erisa Litig.*, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014), *aff'd Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) (same).

For similar reasons, plaintiffs cannot satisfy Rule 23's typicality requirement with respect to the performance of the five TriNet IV Challenged Options they did not hold. For performance-related prudence theories in particular, "the evidence that [p]laintiffs will have to put forward to establish liability will vary from fund to fund, and Plaintiffs' ability to establish liability as to decisions made in connection with one fund will do little to advance their case for liability as to other funds." *Patterson*, 2019 WL 4934834, at *4. For example, plaintiffs will need to prove an entirely different set of facts to establish, on the one hand, that the Cohen & Steers Realty Fund "underperformed" given its strategy of investing in U.S. Real Estate

17

Investment Trusts (so much so that a prudent fiduciary would not select or retain it), than they will need to prove that the Templeton International Bond fund was imprudently retained because it "underperformed" given its very different investment strategy.[16] In short, plaintiffs' claims will undoubtedly require a fund-by-fund analysis for all nine of the TriNet IV Challenged Options, and plaintiffs are not "typical" of plan participants who invested in entirely distinct investment options. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Ch. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161–63 (2d Cir. 2014) (plaintiffs' claims do not "implicate the same set of concerns" as the claims of absent class members in other funds, which will depend on "different questions of proof" that plaintiffs lack a "sufficiently personal and concrete stake" to develop); *Dukes*, 564 U.S. at 348–49 ("a class representative must . . . 'possess the same interest and suffer the same injury' as the class members.").

While plaintiffs cite a handful of cases from other circuits certifying a class in which the named plaintiff invested in some but not all of the challenged investments, those cases are distinguishable because they involved fee or expense-related claims which allegedly injured all plan participants in a similar way regardless of which specific investments they held. *See* Mot. 10–11, n.5 (citing *Beach v. JPMorgan Chase*

---

[16] Defendants are obliged to mention that it is unclear whether plaintiffs intend to pursue prudence claims to the Challenged Options (either in the TriNet IV Plan or the TriNet III Plan) based on their performance histories. Plaintiffs have not disclosed an expert witness to speak to that issue, and it is plaintiffs who bear the burden of proof on the question of whether a prudent fiduciary would have removed these Challenged Options earlier based on their performance profiles. *Gilchrist*, 733 F.2d at 1556; *see also Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 665 (M.D. Fla. 1996).

18

*Bank, Nat'l Assn.*, 2019 WL 2428631, at *5 (S.D.N.Y. June 11, 2019) (certifying a class because "the claims [of the named plaintiff] involve similar inquiries and proof, and thus implicate the same set of concerns" as the claims of the rest of the class); *Clark v. Duke Univ.*, 2018 WL 1801946, at *3 (M.D.N.C. Apr. 13, 2018) (plaintiffs had standing to challenge funds that they did not invest in because plaintiffs' claims centered on a failure to consolidate multiple funds and "plaintiffs allege that the same decision-making process, or lack thereof, resulted in the inclusion of all of these higher-cost funds"); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018) (certifying the class because "plaintiffs' allegations concerning record-keeping and administrative fees challenge the practices of Defendants, not specific funds"); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 157 (S.D.N.Y. 2017) ("the allegedly disloyal and imprudent conduct of defendants 'implicates the same set of concerns'" because participants "who invested in the Affiliated Funds were injured in the same manner" and thus "plaintiffs *do* have a clear path forward to demonstrating defendants' misconduct without undertaking . . . [a] fund-by-fund analysis")). While breach of loyalty claims or claims that a plan's recordkeeping fees were too high may impact all plan participants in a similar way, the same is not true of claims that a specific fund underperformed so substantially as to become an imprudent investment, which raises questions and implicates proof unique to that investment. *See Garthwait*, 2021 WL 4441939, at *5–6 (certifying class with respect to plaintiffs' recordkeeping fee claim but not their claim that certain funds underperformed because courts "have denied standing in the defined-contribution

19

context where a plaintiff has not personally invested in the particular underperforming funds at issue"); *In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *1, 10 (same); *Patterson*, 2019 WL 4934834, at *4.

Accordingly, to the extent the Court deems it appropriate to certify a class of TriNet IV participants to pursue claims that the TriNet IV Challenged Options should have been removed because of their performance histories, it should limit the class claims to those implicating the TriNet IV Plaintiffs' four investments.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for class certification should be denied in two respects. First, the Court should decline to certify a class as to participants in the TriNet III Plan. Second, if the Court decides to certify any class, the class definition should be limited to TriNet IV Plan participants and beneficiaries, and the class claims should exclude any claims related to the performance of funds that the TriNet IV plaintiffs never held.

Dated: June 13, 2022

Sacha Dyson
GRAY ROBINSON, P.A.
401 East Jackson Street
Tampa, FL 33602
(813) 273–5000
sacha.dyson@gray-robinson.com

O'MELVENY & MYERS LLP

*/s/ Catalina Vergara*
Brian D. Boyle (*pro hac vice*)
Catalina Vergara (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383–5300
bboyle@omm.com
cvergara@omm.com

20