UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHIQIONG HUANG, et al.,

      Plaintiffs,

                    Case No. 8:20-cv-2293-VMC-TGW

v.

TRINET HR III, INC., et al.,

      Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiffs' Motion for Class Certification (Doc. # 66), filed on May 23, 2022. Defendants responded on June 13, 2022. (Doc. # 68). Plaintiffs replied on July 6, 2022. (Doc. # 75). For the reasons that follow, the Motion is granted to the extent set forth herein.

**I.   Background**

    **A.   Factual Background**

This Employee Retirement Income Security Act ("ERISA") case involves multiple employer plans ("MEPs"). (Doc. # 23 at ¶ 38). "At its most basic level, a MEP is a retirement plan that is adopted by two or more employers that are unrelated for income tax purposes." (Id. at ¶ 39) (internal quotation marks omitted). MEPs "are typically used by outsourced human

resource providers . . . like TriNet." (Id. at ¶ 38). Specifically, TriNet is a professional employer organization ("PEO") that provides human-resources expertise, payroll, and employee benefits services to small and medium-sized businesses. (Id. at ¶¶ 24, 38).

The retirement plans at issue are the TriNet 401(k) Plan (the "TriNet III Plan") and the TriNet Select 401(k) Plan (the "TriNet IV Plan") (referred to collectively as the "Plans"). (Id. at 1). TriNet established the Plans to help the employees of their client employers save money for retirement. (Id. at ¶ 41). The Plans are defined-contribution plans, (Id. at 42), "which provide[] for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses." 29 U.S.C. § 1002(34). By the end of 2018, the TriNet III Plan had $2.9 billion in assets under management, and the TriNet IV Plan had $1.1 billion in assets under management. (Doc. # 23 at ¶ 48).

Plaintiffs are all participants in the Plans. (Id. at ¶¶ 17-21). Shiqiong Huang, Chris R. Stokowski, Everett Uhl, and Mark J. Hearon ("TriNet IV Plaintiffs") participated in the TriNet IV Plan. (Doc. # 67, Huang Decl. at ¶ 3; Stokowski Decl. at ¶ 3; Uhl Decl. at ¶ 3; Hearon Decl. at ¶ 3). Mary T.

Patterson participated in the TriNet III Plan. (Doc. # 67, Patterson Decl. at ¶ 3). Defendants TriNet HR III, Inc. and TriNet HR IV, Inc. are the sponsors and fiduciaries of the Plans. (Doc. # 23 at ¶¶ 1, 24). Defendant Investment Committee of TriNet Group, Inc. (the "Committee") is responsible for selecting and monitoring the investments in the Plans and monitoring the Plans' expenses. (Id. at ¶ 25). Plaintiffs also name as Defendants the Boards of Directors of TriNet III and TriNet IV because the companies acted through the Boards. (Id. at ¶ 29).

Plaintiffs purport to bring this case as a class action for the following proposed class:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plans, at any time between September 29, 2014 through the date of judgment[.]

(Id. at ¶ 50).

According to Plaintiffs, Defendants breached their fiduciary duties by failing to adequately review the Plans' investment portfolio to ensure that each investment option was prudent, maintained certain funds in the Plan despite the availability of identical or materially similar investment options with lower costs and/or better performance histories, and failed to control the Plans' recordkeeping expenses. (Id.

at ¶¶ 11-12, 57-116). First, Plaintiffs allege that Defendants failed to investigate and utilize lower-cost and better performing passively managed funds in favor of higher-cost actively managed funds. (Id. at ¶¶ 58, 85-96). Specifically, Plaintiffs allege that Defendants retained several actively managed funds in the Plans' investment options "despite the fact that these funds charged grossly excessive fees compared with comparable or superior alternatives[.]" (Id. at ¶ 61). Plaintiffs allege that the expense ratios for many funds in the Plans greatly exceeded the median expense ratio for similar funds. (Id. at ¶¶ 63-66).

Second, Plaintiffs allege that Defendants breached their fiduciary duty by failing to utilize lower fee share classes that are available to "jumbo" defined contribution investment plans. (Id. at ¶¶ 68-77). Plaintiffs allege that "a fiduciary to a large defined contribution plan such as the Plans [here] can use its asset size and negotiating power to invest in the cheapest share class available," but that the TriNet fiduciaries failed to do so on multiple occasions. (Id. at ¶¶ 70, 73-77).

In addition to their allegations regarding the selected investments' costs and performance, Plaintiffs also allege

4

that Defendants failed to monitor or control the Plans' recordkeeping expenses. (Id. at ¶¶ 97-116). Plaintiffs take issue with the Plans' approach of using revenue sharing to pay for the Plans' recordkeeping and administrative costs and with the Plans' process of identifying and retaining its recordkeepers. (Id. at ¶¶ 101, 113-16).

Based on these allegations, Plaintiffs bring the following causes of action: (1) as against the Committee, breach of the fiduciary duty of prudence under ERISA; and (2) as against TriNet and the Board, failure to adequately monitor the Committee, thus breaching their fiduciary duties under ERISA. (Id. at ¶¶ 117-30).

**B.   Procedural History**

Plaintiffs initiated this case on September 29, 2020. (Doc. # 1). In December 2020, the parties filed a joint motion to stay the case pending the Plaintiffs' exhaustion of the administrative remedies set forth in the Plans. (Doc. # 16). The Court granted the motion, requiring periodic status reports. (Doc. # 17). On August 6, 2021, based on the parties' representation that the appeals administrator had issued a final decision, the Court reopened the case. (Doc. # 22). Plaintiffs filed the operative Amended Complaint on August 20, 2021. (Doc. # 23).

Plaintiffs filed their Motion for Class Certification on May 23, 2022. (Doc. # 66). Specifically, Plaintiffs seek to certify the following class: "All persons, except the Defendants and their immediate family members, who were participants in or beneficiaries of the Plans, at any time between September 29, 2014 through the date of judgment (the 'Class Period')." (Doc. # 66 at 3).

Defendants oppose the Motion on three grounds. First, they argue that no named Plaintiff has standing as to the TriNet III Plan. (Doc. # 68 at 1). Second, Defendants contend that Plaintiffs have not satisfied the typicality requirement under Rule 23 as to the TriNet III Plan. (Id. at 2). Finally, they contend that Plaintiffs' claims are not typical as to the funds in the TriNet IV Plan in which Plaintiffs were not invested. (Id. at 2). The Motion has been fully briefed (Doc. ## 68, 75) and is now ripe for review.

## II.  **Legal Standard**

To certify a class action, the moving party must satisfy a number of prerequisites. First, the named plaintiff must demonstrate standing, Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009). Second, the putative class must meet all four requirements enumerated in Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Third, the putative class must fit into at least one of the three class types defined by Rule 23(b). Vega, 564 F.3d at 1265. Relevant to this case, Rule 23(b)(1) permits certification of a class in two circumstances. Certification under Rule 23(b)(1)(A) is appropriate where separate actions by individual class members creates a risk of "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). Certification under Rule 23(b)(1)(B) is appropriate when one class member's action would, "as a practical matter . . . be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

The party moving to certify any class or subclass ultimately bears the burden of proving that all prerequisites are met. See Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233-34 (11th Cir. 2016).

### III. __Analysis__

#### A.   __Standing__

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-PGB-DCI, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016) (citing Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id.

"The party invoking federal jurisdiction bears the burden of establishing' standing." Clapper, 133 S. Ct. at 1148 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

The injury in fact requirement is the most important element. Spokeo, 136 S. Ct. at 1547. An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it must actually exist." Spokeo, 136 S. Ct. at 1548. The Supreme Court in Spokeo emphasized that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. at 1549.

Defendants argue that no Plaintiff has standing to pursue claims related to the TriNet III Plan. (Doc. # 68 at 10). Defendants contend that Plaintiffs did not suffer any injury under their own theory of the case. Only Ms. Patterson invested in the TriNet III Plan, and she did not invest in one of the funds challenged by Plaintiffs. (Id. at 10-11). Ms. Patterson also paid lower annual recordkeeping fees than Plaintiffs' expert asserts are reasonable. (Id. at 11). The TriNet IV Plaintiffs did not invest in any of the TriNet III

Plan funds and paid recordkeeping fees pursuant to a separate arrangement. (Id. at 12).

In their reply, Plaintiffs do not address Defendants' argument that Ms. Patterson lacks standing. Instead, Plaintiffs respond that the TriNet IV Plaintiffs have standing to bring a class action on behalf of the unnamed individuals in the TriNet III Plan. (Doc. # 75 at 1). They point out that several other courts have determined that a named plaintiff has standing to sue on behalf of several plans where each plan was administered by the same company and the alleged conduct affected participants across different plans in a similar manner. (Id. at 2).

The Court agrees with Defendants that Ms. Patterson lacks standing. Ms. Patterson has not demonstrated an injury in fact. She was not invested in any of the challenged funds in the TriNet III Plan, and – based on the report of Plaintiffs' own expert – she did not pay excessive recordkeeping fees. Ms. Patterson was invested in the Vanguard 2015 Fund and the TriNet III Plan stable value fund, neither of which are funds Plaintiffs challenge in the complaint. (Doc. # 68 at 10). Plaintiffs' expert asserts that the reasonable cost of recordkeeping for the Plans was $36 per participant. (Doc. # 69, Ex. 8 at 17). During 2017 and

2018, the two full years in which Ms. Patterson was invested in the TriNet III Plan, she paid $25.80 and $25.96 in recordkeeping fees respectively. (Doc. # 69 at ¶¶ 13-14). Despite Plaintiffs' assertion that Ms. Patterson paid excessive recordkeeping fees, the fees Ms. Patterson actually paid are well below the amount their own expert deems reasonable.

Ms. Patterson has not demonstrated an injury in fact, and, therefore, lacks standing. Plaintiffs' claims as to Ms. Patterson are dismissed without prejudice, and Ms. Patterson will not be appointed as a representative for the certified class.

Nevertheless, the TriNet IV Plaintiffs have standing to pursue their claims related to both the TriNet III and TriNet IV Plans. The TriNet IV Plaintiffs invested in challenged funds in the TriNet IV Plan and allegedly paid excessive recordkeeping fees. (Doc. # 67, Huang Decl. at ¶ 5; Stokowski Decl. at ¶ 5; Uhl Decl. at ¶ 5; Hearon Decl. at ¶ 5). Defendants argue that the TriNet IV Plaintiffs do not have standing to pursue claims related to the TriNet III Plan. However, Defendants confuse the constitutional standing requirement with the Rule 23(a) typicality requirement. See Fallick v. Nationwide Mut. Ins. Co., F.3d 410, 424 (6th Cir.

11

1998) ("[O]nce a potential ERISA class representative establishes his individual standing to sue his own ERISA governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong."); Velazquez v. Massachusetts Fin. Servs. Co., 320 F. Supp. 3d 252, 257 (D. Mass. 2018) ("Defendants argue that plaintiff lacks standing to bring claims on behalf of a plan in which she was never enrolled and for the period after which she closed her account. This position erroneously conflates the requirements of Article III . . . with the procedural requirements of Rule 23." (quotations omitted)).

The TriNet IV Plaintiffs have demonstrated an injury in fact by investing in the challenged funds and paying allegedly excessive recordkeeping fees. The TriNet IV Plaintiffs allege that they, along with all other Plan participants, were injured in the same manner due to Defendants' failure to discharge their duties in the interests of Plan participants, leading to unreasonable recordkeeping fees and unreasonable investment options with high expenses and poor performance.

Several other courts have found standing in similar ERISA class actions, where the challenge is to the defendants' general practices affecting all plans. See Fallick, F.3d at

421-24 (reversing denial of class certification and determining named plaintiff had demonstrated constitutional standing to bring claims related to plans to which he did not belong); Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993) (reversing denial of class certification where the named plaintiff was only invested in one of four challenged pension plans); Velazquez, 320 F.Supp.3d at 257-58 (finding the named plaintiff established standing to bring claims "on behalf of a plan in which she was never enrolled and for the period after which she closed her account"); Mulder v. PCS Health Systems, Inc., 216 F.R.D. 307, 317 (D.N.J. 2003) (individual in one ERISA benefit plan may represent a class of participants in numerous other plans).

Because the TriNet IV Plaintiffs have standing to pursue all claims related to both Plans, the Court now turns to the requirements for class action certification.

**B.    Ascertainability of Class**

"Ascertainability is an implied prerequisite of Rule 23." Cherry v. Dometic Corp., 986 F.3d 1296, 1302 (11th Cir. 2021). "Class representatives bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class satisfies

the enumerated prerequisites of Rule 23(a)." Id. (citation omitted).

The Eleventh Circuit has "collapsed class definition and ascertainability into one inquiry. A class is inadequately defined if it is defined through vague or subjective criteria. And without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." Id. (citations omitted). However, "[b]ecause administrative feasibility has no connection to Rule 23(a), it is not part of the ascertainability inquiry." Id. at 1303.

The Court agrees with Plaintiffs that the class is ascertainable. As Plaintiffs note, the "proposed class definition is objective and the identification of its members is administratively feasible via the Plans' participant records." (Doc. # 66 at 10). The Plan participants during the relevant time can be "readily determined from the records of the Plan[s][.]" Pizarro v. Home Depot, Inc., No. 1:18-cv-01566-WMR, 2020 WL 6939810, at *4 (N.D. Ga. Sept. 21, 2020). Defendants do not dispute that the class is ascertainable.

Whether the class meets the requirements of Rule 23 is a separate question, to which the Court now turns.

### C.   **Rule 23(a) Requirements**

The putative class must meet all four requirements outlined in Rule 23(a): "numerosity, commonality, typicality, and adequacy of representation." Vega, 564 F.3d at 1265 (quoting Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003)). Although Defendants only challenge the typicality requirement, the Court will address each in turn. See Piron v. Gen. Dynamics Info. Tech., Inc., No. 3:19-cv-709, 2022 WL 363958, at *5 (E.D. Va. Feb. 7, 2022) ("A review of the record discloses that the proposed class meets each of these [Rule 23(a)] elements. Defendants do not appear to suggest otherwise. Nonetheless, it is appropriate to confirm that to be the case.").

### 1.   **Numerosity**

Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "mere allegations of numerosity are insufficient," Rule 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013); see Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009); Evans v. U.S. Pipe & Foundry

Co., 696 F.2d 925, 930 (11th Cir. 1983) (explaining that the class representative is not required to establish the exact number in the proposed class). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." Manno, 289 F.R.D. at 684 (quoting Vega, 564 F.3d at 1267).

Plaintiffs argue that the numerosity requirement is met because there are over 94,000 participants in the TriNet III Plan and 16,000 participants in the TriNet IV Plan. (Doc. # 66 at 12). In their complaint, Plaintiffs state that, in 2019, there were 94,295 participants in the TriNet III Plan and 16,167 in the TriNet IV Plan. (Doc. # 23 at ¶ 104).

Plaintiffs have satisfied the numerosity requirement. The Eleventh Circuit has indicated that having more than forty class members is generally enough to satisfy the numerosity requirement. See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) ("[T]he trial court's decertification of the 47-member class for lack of numerosity was by no means compelled by Rule 23 or the case law. As the trial judge who originally certified the class pointed out, citing 3B Moore's Federal Practice ¶ 23.05[1] at n. 7 (1978), while there is no

16

fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'"). And, again, the Court notes that Defendants do not argue that the numerosity requirement is unmet.

### 2. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality pertains to the characteristics of the group or class as a whole, unlike typicality, which refers to the individual characteristics of the class representative as compared to those of the class members. Piazza v. Ebsco Indus. Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (citing Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Commonality "does not require that all the questions of law and fact raised by the dispute be common or that common questions of law or fact predominate over individual issues." Vega, 564 F.3d at 1268. In fact, commonality can be satisfied even with some factual variations among class members. Armstead v. Pingree, 629 F. Supp. 273, 280 (M.D. Fla. 1986).

In Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011), the Supreme Court clarified the commonality requirement for

17

class certification by specifically rejecting the use of generalized questions to establish commonality. Noting that "any competently crafted class complaint literally raises common questions," the Court focused the required discussion as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Id. at 350 (internal citation omitted) (emphasis in original). The Court explained that the "common contention" underpinning a finding of Rule 23(a)(2) "must be of such a nature that it is capable of class wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Plaintiffs contend that the commonality requirement is met because the questions related to whether Defendants breached their fiduciary duty are questions of law and fact common to all Plan participants. Plaintiffs allege Defendants breached their fiduciary duty by

> selecting and retaining investment options in the Plans despite the high cost of the funds in relation

18

> to other comparable investments; failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plans; and failing to monitor or control the compensation paid for recordkeeping and administration services[.]

(Doc. # 66 at 14). Additionally, all Plan participants were subject to the Defendants' decisions regarding selection of Plan investments and recordkeeping arrangements. (Id. at 14).

The Court agrees with Plaintiffs. "Accordingly, the Court concludes that the questions posed . . . are common to the claims of the class members of those respective classes and, consequently, will generate answers common to all of those class members." Pizarro, 2020 WL 6939810, at *10 (citation omitted). These questions are sufficient to show commonality because they will generate common answers and require the same proof for all class members.

### 3.  **Typicality**

The focus of Rule 23(a)(3) typicality is whether the class representatives' interests are so aligned with the proposed class that they may stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. See Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1322–23 (11th Cir. 2008) ("[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.").

To establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). When the class representatives' injuries are different from that of the rest of the class, their claims are not typical and they cannot serve as the class representatives. Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Moreover, when proof of the class representatives' claims would not necessarily prove the claims of the proposed class members, the class representatives do not satisfy the typicality requirement. Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990). "Typicality, however, does not require identical claims or defenses." Kornberg, 741 F.2d at 1337. "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." Id.

Defendants contend the TriNet IV Plaintiffs cannot satisfy the typicality requirement in two respects. First, Defendants argue the TriNet IV Plaintiffs' claims are not typical of the claims of potential class members in the TriNet III Plan. (Doc. # 68 at 14). The TriNet IV Plaintiffs did not

20

invest in any of the challenged funds in the TriNet III Plan. (Id. at 14). Further, the Plans are serviced by different recordkeepers, which provide different services and utilize different fee structures. (Id. at 4-5). Second, Defendants argue that the TriNet IV Plaintiffs cannot satisfy the typicality requirement with respect to the claims challenging funds in which they did not invest in the TriNet IV Plan. (Id. at 17). Because the TriNet IV Plaintiffs' claims are not typical of the participants in the TriNet III Plan or the other funds in the TriNet IV Plan, Defendants state that "the class definition should be limited to TriNet IV Plan participants and beneficiaries, and the class claims should exclude any claims related to the performance of funds that the TriNet IV plaintiffs never held." (Id. at 20).

In their reply, Plaintiffs argue that the TriNet IV Plaintiffs' claims satisfy the typicality requirement as to the TriNet III Plan because both Plans "(1) have identical sponsors and named fiduciaries; (2) are administered by the same Committee; (3) have a nearly identical menu of funds for investment; and (4) Defendants failed to comply with their fiduciary obligations to both Plans in identical ways." (Doc. # 75 at 3). They also contend that they satisfied the typicality requirement as to the funds in which the TriNet IV

Plaintiffs were not invested because they "allege similar harm resulting from defendants' alleged fiduciary breaches." (Doc. # 66 at 15). They argue that they are challenging "the process utilized by Defendants [that] resulted in the selection of several imprudent funds as well as in excessive recordkeeping fees," thereby implicating the TriNet IV Plan as a whole. (Doc. # 75 at 5). The Court addresses each of these arguments in turn.

First, the TriNet IV Plaintiffs are not typical representatives as to the TriNet III Plan. None of the TriNet IV Plaintiffs invested in any of the challenged funds in the TriNet III Plan. (Doc. # 67, Huang Decl. at ¶ 5; Stokowski Decl. at ¶ 5; Uhl Decl. at ¶ 5; Hearon Decl. at ¶ 5). There is no overlap between the TriNet III challenged funds and the TriNet IV challenged funds. (Doc. # 23 at ¶¶ 92-93). The Plans also utilized different recordkeepers operating under different contracts. (Doc. # 68 at 4-5). MassMutual is the recordkeeper for the TriNet III Plan, and TransAmerica is the recordkeeper for the TriNet IV Plan. (Doc. # 23 at ¶ 113 n.20). The recordkeepers were chosen through separate Request for Proposal processes in 2015 and 2018. (Id.). Finally, the recordkeeping arrangements for the Plans are subject to different fee structures: "MassMutual collects its service

22

fees from the TriNet IV Plan via an asset-based fee whereas Transamerica charges both a per-participant fee and a contract asset charge." (Doc. # 68 at 4-5).

There is not a sufficient nexus between the TriNet IV Plaintiffs' claims and the claims of unnamed class members in the TriNet III Plan to satisfy the typicality requirement. "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). The TriNet III Plan claims are not based on similar enough facts to the TriNet IV Plan. None of the challenged funds are common to both plans, and the recordkeeping arrangements were handled by separate companies under separate agreements. Because recovery under ERISA is on behalf of the plan as a whole, the TriNet IV Plaintiffs have no incentive to prove the TriNet III claims. See 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]"). The TriNet IV Plaintiffs do not possess the same interest and did not suffer

the same injury as the unnamed class members in the TriNet III Plan.

Second, the TriNet IV Plaintiffs are typical representatives as to the TriNet IV Plan. The TriNet IV Plaintiffs were invested in four of the challenged funds in the TriNet IV Plan and were subject to the same allegedly excessive recordkeeping fees as all other participants in the TriNet IV Plan. Defendants' alleged breach of their fiduciary duty affected all participants in the TriNet IV Plan in the same manner. The TriNet IV Plaintiffs' claims and the claims of all participants in the TriNet IV Plan are based on the same legal theory and underlying events: the Committee Defendants breached their duty of prudence by imprudently selecting, administering, and reviewing the TriNet IV Plan investments and recordkeeping fees, and TriNet and the Board Defendants breached their duty by failing to monitor the performance of the Committee.

Other courts have reached the same conclusion based on plans involving multiple funds. See Boley v. Universal Health Servs., Inc., 36 F.4th 124, 134–35 (3d Cir. 2022) ("Named Plaintiffs' interests are sufficiently aligned with those of the class because the common allegation for each class member — Universal's alleged imprudence in managing the Plan's funds

— is comparably central to the claims of the named plaintiffs as to the claims of the absentees." (quotations omitted)); Cunningham v. Cornell Univ., No. 16-cv-6525 (PKC), 2019 WL 275827, at *7 (S.D.N.Y. Jan. 22, 2019) ("The allegedly imprudent conduct thus impacted the funds in the Plans in a similar manner. The variations between Plan participants' individual account choices do not destroy the typicality of plaintiffs' claims."); Clark v. Duke Univ., 2018 WL 1801946, at *3 (M.D.N.C. Apr. 13, 2018) (plaintiffs' claims were typical because they "allege[d] that the same decision-making process, or lack thereof, resulted in the inclusion of all of these higher-cost funds"); Sims v. BB & T Corp., No. 1:15-cv-732, 2017 WL 3730552, at *4 (M.D.N.C. Aug. 28, 2017) ("In this case, each named plaintiff's claim and each class member's claim is based on the same events and legal theory — a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the Plan's investments.").

Therefore, the TriNet IV Plaintiffs have met the typicality requirement as to their claims regarding the TriNet IV Plan. Because the TriNet IV Plaintiffs are not typical representatives as to the TriNet III Plan, the Court

narrows the certified class to include only participants in the TriNet IV Plan.

### 4. <u>Adequacy</u>

The adequacy of representation analysis involves two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action." <u>Valley Drug Co.</u>, 350 F.3d at 1189 (quoting <u>In re HealthSouth Corp. Sec. Litig.</u>, 213 F.R.D. 447, 460-61 (N.D. Ala. 2003)). "The existence of minor conflicts alone will not defeat a party's claim to class certification." <u>Id.</u> Rather, "the conflict must be a fundamental one going to the specific issues in controversy." <u>Id.</u> In securities cases, the Eleventh Circuit has stated that "class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." <u>Fuller v. SunTrust Banks, Inc.</u>, No. 1:11-cv-784-ODE, 2018 WL 3949698, at *5 (N.D. Ga. June 27, 2018) (quoting <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 718, 728 (11th Cir. 1987)).

Here, the TriNet IV Plaintiffs will provide adequate representation for the class. First, the TriNet IV Plaintiffs

"have no interests antagonistic with each other, the [c]lass, or any segment of the [c]lass." (Doc. # 66 at 16). They were participants during the relevant time and seek Plan-wide relief for Defendants' alleged breach of fiduciary duty. (Id.).

Second, the TriNet IV Plaintiffs have shown that they will adequately prosecute the action. Each named Plaintiff has "submitted a declaration attesting to their efforts to date and confirming their desire to serve as a representative" of the class. (Id. at 17; Huang Decl. at ¶ 12-13; Stokowski Decl. at ¶¶ 12-13; Uhl Decl. at ¶¶ 12-13; Hearon Decl. at ¶¶ 12-13). Each of the TriNet IV Plaintiffs has reviewed the complaint, maintained contact with counsel, provided documents in discovery, and been deposed. (Doc. # 66 at 17). Courts have found similar declarations sufficient to show the named plaintiffs' adequacy. See Pizarro, 2020 WL 6939810, at *11 ("[Plaintiffs] have responded to discovery requests. . ., appeared for depositions. . ., and submitted affidavits attesting to their participation in this action and their willingness to pursue the case vigorously[.]"); Fuller, 2018 WL 3949698, at *6 (finding class representatives had demonstrated adequacy through similar affidavits).

D.   **Rule 23(b)**

In addition to the requirements of Rule 23(a), the class must satisfy at least one of the three requirements of Rule 23(b). The TriNet IV Plaintiffs assert that the class should be certified under either Rule 23(b)(1)(A) or 23(b)(1)(B). Rule 23(b)(1)(B), which the TriNet IV Plaintiffs contend is most appropriate for certification, states that a class action may be maintained if "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Defendants do not challenge that the class meets one of the requirements of Rule 23(b).

The Court agrees that the proposed class as modified in this Order meets the requirement in Rule 23(b)(1)(B). "A classic case of certification under Rule 23(b)(1)(B) includes 'actions charging a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust.'" Pizarro,

28

2020 WL 6939810, at *13 (citing Ortiz v. Fibreboard Corp., 527 U.S. 815, 834 (1999)); see also Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment) (instructing that certification under Rule 23(b)(1)(B) is appropriate where plaintiffs allege breach of fiduciary duty affecting the members of a large class of security holders or other beneficiaries).

Further, courts in the Eleventh Circuit have certified ERISA fiduciary breach cases under Rule 23(b)(1). See Pizarro, 2020 WL 6939810, at *12-15; Henderson, 2018 WL 6332343, at *9-10; Fuller, 2018 WL 3949698, at *7-8; In re Suntrust Banks, Inc. ERISA Litig., No. 1:08-cv-03384-RWS, 2016 WL 4377131, at *5-8 (N.D. Ga. Aug. 17, 2016). Thus, the proposed class meets the requirements of Rule 23(b)(1)(B).

Alternatively, the TriNet IV Plaintiffs' modified proposed class also meets the requirements of Rule 23(b)(1)(A), which allows class actions if separate actions "would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike . . . or where

29

the [defendant] must treat all alike as a matter of practical necessity." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997) (citation omitted). Here, Defendants owed the same fiduciary duty to all class members. (Doc. # 66 at 25). Therefore, certification under 23(b)(1)(A) would also be appropriate.

**IV.   Conclusion**

In short, the TriNet IV Plaintiffs have satisfied all of Rule 23's requirements with respect to the TriNet IV Plan. The Court will certify the class as defined below:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the TriNet IV Plan, at any time between September 29, 2014 through the date of judgment[.]

> Accordingly, it is

> **ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiffs' Motion for Class Certification (Doc. # 66) is **GRANTED** to the extent stated herein as to the class defined in the conclusion of this Order.

(2)   Plaintiffs Shiqiong Huang, Chris R. Stokowski, Everett Uhl, and Mark J. Hearon are appointed as lead Plaintiffs and class representatives.

(3)   Plaintiff Mary Patterson's claims are **DISMISSED** without prejudice.

(4)   Capozzi Adler, P.C., is appointed as class counsel.

(5)   Pursuant to the Court's Order granting the Joint Motion
      for a Stay (Doc. # 78), the parties shall file — if they
      wish — motions for summary judgment and Daubert motions
      within 30 days from the date of this Order.

      **DONE** and **ORDERED** in Chambers in Tampa, Florida, this
21st day of October, 2022.

                                 Virginia M. Hernandez Covington
                           _____
                           VIRGINIA M. HERNANDEZ COVINGTON
                                UNITED STATES DISTRICT JUDGE